ANNA MAY RUSSELL

*v.*

CHICAGO AND MILWAUKEE ELECTRIC RAILWAY CO. *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. DEDICATION—*acceptance is essential to dedication.* To constitute a highway by dedication, whether statutory or otherwise, it is essential that there be an acceptance of the dedication by proper public authorities.

2. SAME—*acts of donor and of the public must be certain.* If a highway is claimed by dedication, the acts of the donor and of the public evidencing an intention on the one part to dedicate and upon the other to accept the dedication must be certain.

3. SAME—*effect of selling lots with reference to plat.* The estoppel to deny the existence of platted streets which arises against parties who sell property with reference to the plat does not go to the extent of establishing such streets as public highways, irrespective of their acceptance as such by the public authorities.

4. SAME—*fee of street does not vest in municipality until acceptance of dedication.* Until the proper municipal authorities have accepted streets dedicated by means of a plat the fee of such streets does not vest in the municipality.

5. SAME—*acceptance of a plat is not an acceptance of all the platted streets.* The acceptance of a plat by municipal authorities is not necessarily an acceptance as public highways of all the streets and alleys shown upon the plat, since the municipality has the right to elect what streets shall become public highways.

6. STREET RAILWAYS—*company has no right to exclusive use of street.* The use of public highways which may be granted to street railway companies by county or city authorities is not an exclusive use, but one in common with the use of the public.

7. SAME—*company cannot enter upon private property except under special circumstances.* License from county authorities to a street railway company to enter upon land which is not a public highway has no effect, and the company cannot enter thereon except by complying with the law applicable to the taking of private property for its use.

8. INJUNCTION—*when construction of street railway may be enjoined.* The construction of a street railway upon an alleged public highway under authority from the county board may be enjoined by an abutting owner who owns the fee of such alleged highway subject to an offer of dedication never accepted by the public in any way.

*Russell* v. *Chicago and Mil. Elec. Ry. Co.* 98 Ill. App. 347, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

BOWEN W. SCHUMACHER, (LOUIS ZIMMERMAN, of counsel,) for appellant.

WOOD & OAKLEY, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Lake county on May 19, 1899, by Anna May Russell, against the Chicago and Milwaukee Electric Railway Company and the North American Railway Construction Company, praying for a temporary injunction restraining the defendants from constructing an electric street railway and certain trestle-work and from cutting trees and erecting telegraph poles in front of complainant's premises, upon what was known as Railroad avenue. The bill also asked that upon a final hearing said Chicago and Milwaukee Electric Railway Company be perpetually enjoined from the further construction of said proposed work and from operating and maintaining a system of electric railways over said so-called Railroad avenue in front of complainant's premises, which alleged street in front of her premises complainant claimed to own, and that the defendants be required to remove the obstructions theretofore placed by them in said alleged street and to restore the latter to its former condition. A temporary injunction was granted in accordance with the prayer of the bill. Afterwards, on June 7, 1899, the injunction which had extended over the full width of the strip of land known as Railroad avenue, which was sixty-six feet, was dissolved as to the west thirty-three feet thereof, upon the defendants' giving bond in the sum of $5000, conditioned for the payment of the amount of any judgment or decree or the award of any arbitrators that

might be entered against them in favor of complainant for damages caused by the use of the west thirty-three feet of the said Railroad avenue opposite complainant's premises.   Defendants having afterwards filed an answer to the bill and complainant her replication thereto, a hearing was had, and on March 6, 1900, a decree was entered, from which an appeal was taken to the Appellate Court, and from the judgment affirming and reversing the decree in part this appeal has been perfected.

The evidence upon which the decree in this case is based is not incorporated in the record by means of a certificate of evidence, and consequently the facts recited in the decree must be taken as true.   If the findings of the decree are sufficient it must be sustained; if not, it must fall.

The decree in this case was a very lengthy one and contained findings on many different questions.   The case turns largely upon the question whether said Railroad avenue is a street or highway, or whether the appellant is the owner of the title to the same.   We will refer only to such of the findings as are necessary to make clear the grounds upon which we act in disposing of the case.

It appears from the recitals of the decree that on the 7th day of June, 1873, Jacobs & Gurnell executed a plat subdividing into lots, blocks, streets and avenues a portion of section 36, town 43, range 12, and of fractional section 13, town 43, range 13, in the county of Lake. The lands so subdivided adjoined the city of Highland Park on the south, and the plat was entitled as "South Highland addition to Highland Park."   The plat was acknowledged before a proper officer and certified by the county surveyor of Lake county and recorded in the office of the county recorder.   The streets and avenues were shown on the plat to be sixty-six feet in width, and the length and width of the lots, as stated on the plat, extended to the middle of the streets and avenues, but the plat showed distinct boundary lines of the streets

and avenues and of the lots. The plat showed the names
of the different streets and avenues and the numbers of
the respective lots. The appellant, on the 21st day of
May, 1892, became the owner of lots 151, 152 and 153,
which, as shown by the plat, abutted on a strip of land
designated "Railroad avenue" on the plat. The former
owner of the lots had erected thereon a two-story frame
dwelling and a barn, both of which faced upon the said
Railroad avenue and are now occupied by a tenant of
the appellant. Said Railroad avenue furnished the only
means of ingress or egress to or from the lots, there
being no alleys marked on the plat. The land adjoining
Railroad avenue on the west is the right of way of the
Chicago and Northwestern railway, and is not included
in the platted ground. The city of Highland Park ex-
tended its limits southward over a portion of the platted
ground, so that the city limits passed along the north
line of appellant's northernmost lot, being lot No. 151,
but did not bring any part of either of said lots, or the
street in front of them, within the corporate limits. The
strip marked on the plat as Railroad avenue is a contin-
uation of a street of the same name in the city of High-
land Park, and said city improved a portion of said strip
in that portion of the plat over which the city limits were
extended, by grading the road-bed and laying a sidewalk.
A sidewalk four feet in width had been constructed in
1892 by public contributions,—that is, by voluntary sub-
scription by the property holders,—and has since been
maintained on the east line of Railroad avenue adjoining
the west line of appellant's three lots, and also a bridge
for foot passengers in connection with said sidewalk had
been constructed across a ravine by funds raised in the
same manner as those provided for the walk. The town
of Deerfield (the county of Lake being under township or-
ganization) built a culvert on said Railroad avenue about
one hundred and ten rods south of appellant's lots. The
ravine rendered Railroad avenue impassable for teams

in the block on which appellant's lots abutted. The passenger depot of the Chicago and Northwestern Railway Company was on Railroad avenue, about five hundred feet south of appellant's lots. Access to her lots was obtained from the south by means of Railroad avenue. In front of her lots, and up to the ravine at the north end thereof, there was a natural growth of trees on said Railroad avenue. On the 27th day of June, 1891, the commissioners of highways of the town of Deerfield, by a resolution, accepted the following streets marked on said plat: A portion of Roger Williams avenue, which opens upon Railroad avenue one hundred and seventy-six feet south of appellant's lots, and Judson avenue from the city limits of the city of Highland Park southward. The city of Highland Park, some time prior to 1899, (not more clearly fixed by the decree,) accepted the territory within the plat to the north line of appellant's lots, including the strip of ground marked Railroad avenue.

The court further found that up to the 9th day of May, 1899, said subdivision, as hereinbefore set forth, was a portion of the town of Deerfield, and that on said date said subdivision was annexed to the city of Highland Park, pursuant to the statutes of the State of Illinois in that behalf, and that on said 9th day of May, 1899, the city council of the city of Highland Park passed the ordinance of annexation, in and by which the city clerk was directed to prepare and file with the recorder of Lake county, Illinois, a copy of the ordinance of annexation, together with an accurate map of said annexed territory, and that pursuant to said ordinance the clerk of said city did thereafter, on the 17th day of May, 1899, file with the recorder of Lake county, Illinois, a copy of said annexation ordinance and a map or plat of said premises, which said plat was prior to the filing thereof duly acknowledged by the mayor of said city, and that on said plat appear the streets, avenues and lots in precisely the same form as in plat of South Highland addi-

tion to Highland Park, and two ordinances of the city of
Highland Park passed and approved July 14, 1899, and
August 1, 1899, respectively accepting, by name, certain
streets in the annexed territory of Ravinia, but not in-
cluding in either of said ordinances said so-called Rail-
road or Railway avenue.    The court further found that
the appellee railway company was incorporated under
the laws of the State and had authority to build, operate
and maintain a street railway; that on the first day of
March, 1899, it petitioned the board of supervisors of
the county of Lake to grant it the right of way over the
strip of ground marked on the plat as Railroad avenue,
from the south line of the corporate limits of the city of
Highland Park (which at that time was at the north line
of appellant's lots) to the southern terminus of said ave-
nue; that the petition was accompanied by a petition of
the requisite number of property owners and was granted
by said board; that under color of this grant said rail-
way company, through the appellee construction com-
pany, entered upon said Railroad avenue and began the
construction of its road there, including an embankment
and a bridge in the avenue across the ravine at the north
end of appellant's property.

The block in which appellant's property is situated
is bounded on the north by Marsham street, on the east
by Judson avenue, on the south by Roger Williams ave-
nue and on the west by Railroad avenue.    There is no
alley through the block and there are lots belonging to
other persons to the north and south of her, so that there
is no access to her property other than over Railroad
avenue.    As to the contour and the lay of the street in
front of appellant's property, the decree finds that said
lots and street gradually decline from Roger Williams
avenue north to a point one hundred feet north of the
south line of lot 151, which is appellant's northernmost
lot, at an average grade of from two to two and a half
feet to the one hundred feet, at which point the surface

of said lots on said avenue declines sharply into the ravine, said ravine being about twenty feet deep and one hundred and eighty feet across, and that the said Railroad avenue and the lots of appellant have the same general characteristics as to grade and ravine.    Appellant's lots count from north to south, lot 151 having a frontage of two hundred and fifty-five and a half feet and lots 152 and 153 each having a frontage of one hundred feet, making her total frontage four hundred and fifty-five and a half feet. As to the character of the grade and trestle built by appellees in front of appellant's property on the west thirty feet of said Railroad avenue, the decree finds, substantially, that appellees constructed, on a level and without regard to the natural grade of the said Railroad avenue, and beginning at the south of appellant's premises, a three-foot embankment to a point forty-one feet north of the south line of lot 153, and from that point north, the full length of appellant's premises, appellees constructed a trestle, consisting of four piles driven in the ground, crosswise, twelve inches in diameter, thus forming piers, which were built every twenty feet apart in front of said lots and along said depression and across said ravine, and the trestle-work as thus constructed varied in height from about three feet at the point of beginning to twenty-five feet at the ravine, and that in front of the dwelling house upon the appellant's premises the said trestle extended six feet above the natural grade.    The road-bed and trestle were designed for a double-track electric railway.    The injunction prayed in the case was to restrain the further prosecution of this work by the appellee companies.    After the dissolution of the temporary injunction that was granted and the filing of a bond by appellees in the sum of $5000, conditioned for the payment of any damages appellant might, by suit or arbitration, establish, appellees proceeded to build and put in operation said electric railway, and the same was in full operation at final hearing of this cause.

The appellant was one of the signers of the petition upon which the board of supervisors acted in granting the appellee company the right of way on said avenue. The decree finds she was not thereby estopped to ask the court to restrain the construction of the railway in Railroad avenue, for the reason a representative of the appellee company, who presented the petition to her for her signature, induced her to sign it by representing to her, to quote from the decree, "that in front of her said premises, as aforesaid, down to the edge of the ravine, said Chicago and Milwaukee Electric Railway Company would place its tracks on the natural grade of said land and build a broad bridge over the ravine, thereby saving her a large amount of special assessments; thereupon, on said representations, complainant signed said petition;" and that though the engineer of the company, on her complaint that the embankment was higher than had been promised her, reduced it two or three feet, and to the lowest possible grade consistent with the safe operation of the road, along its track and on and over the bridge across the ravine, and turned the grade several feet farther from appellant's lots to the westward, yet "that the height of the grade was higher than the'grade promised by the company." The court further found that the appellee company had not compensated or offered to compensate the appellant for the right of way along said avenue, or for the damages occasioned to her lots by reason of the construction and operation of the road.

On the theory, to quote from the decree, "said so-called Railroad avenue, though it had been dedicated, by reason of said plat, for public use, had never been accepted by the proper public authorities or by user of the public, and until accepted by the proper public authorities or user of the public is and was not subject to the jurisdiction of the county board of the county of Lake as a public highway, or for any other purpose," and that the complainant therefore (to quote again) "owned the

fee to the whole of said Railroad avenue in front of her said lots, subject, however, to the rights of the public to accept said so-called Railroad avenue as a street, should they wish to do so," and for the reason it appeared to the court that the damages sustained by the complainant by reason of the wrongful acts complained of in her said bill of complaint are relatively small in comparison with damages that would accrue to the defendant company should the operation of said road as now located be enjoined or should the defendant railway company be directed by the mandatory injunction of this court to remove its said tracks and trestle in front of complainant's premises, and that said premises are not occupied by complainant as her homestead, but are rented, when tenants therefor can be had, as a source of income to complainant, and that the damage to complainant's said lands by reason of the occupation of the west twenty-five feet of Railroad avenue in the manner hereinbefore described in this decree could be made good to her by a money judgment, it was ordered, adjudged and decreed that an issue be made up in this cause, to be tried by a jury or by the court, as the parties shall elect, in which issue shall be tried the following questions, and a single money judgment therefor shall be entered herein in accordance with the verdict of the jury or the finding of the court: First, the value of the west twenty-five feet of said Railroad avenue in front of appellant's lots; second, the damages to said lots 151, 152 and 153 which they have sustained or may sustain by reason of the construction of said trestle and structure and road-bed and the operation of the railway upon the west twenty-five feet of said Railroad avenue as aforesaid. And it was ordered that the defendant railway company shall pay all costs of this proceeding, to be taxed by the clerk, including a reasonable solicitor's fee for the complainant's solicitors, and that the value of the lands taken, and of the damages to the residue of complainant's lots, be ascertained

as hereinbefore provided; "that the appellant should proceed to have her damages ascertained within the period of six months, and should the defendant company fail to pay the money judgment so to be rendered against it within the period of thirty days after the rendition thereof in the trial court, but should make default, that said railway company be and are hereby perpetually enjoined from operating and maintaining its system of street railway upon the embankment and trestle-work erected in front of appellant's lots, and from operating and maintaining a system of electric railways over, across and upon said so-called Railroad avenue in front of said lots, as aforesaid, and should remove said embankment and trestle-work in front of complainant's said lots, and to restore the said strip of land known and described as Railroad avenue, as near as may be, to the condition it was before the defendants, or either of them, committed the said injuries and trespass," etc.

Appellant being dissatisfied with the relief granted by the decree of the circuit court, prosecuted an appeal to the Appellate Court for the Second District. The Appellate Court affirmed the decree, except as to the provision ordering appellant to institute proceedings to have her damages ascertained and the provision requiring the parties to have the issue tried by a jury or by the court, as the parties might elect, and remanded the cause, with directions to the circuit court "to modify the decree so as to provide that the proceedings to condemn be instituted by the railway company, and that the issue to be made up be tried by a jury, unless the parties waive a jury and elect to try it by the court." The appellant has perfected this appeal to this court to secure a reversal of the judgment of the Appellate Court.

From our examination of the decree and record before us, we concur in the conclusions reached by the chancellor that Railroad avenue, along the block in which appellant's property is located, is not a public highway,

and that the action of the board of supervisors of Lake county purporting to grant to the appellee the Chicago and Milwaukee Electric Railway Company the license or authority to construct its road over said portion of said Railroad avenue was void, for the reason that although said Railroad avenue was shown upon the plat of the addition in which appellant's premises are situated, and although the plat was in compliance with the statute, the making and recording of such plat amounted to no more than the offer to dedicate the streets and avenues shown thereon, and until accepted by the proper authorities in some of the modes known to the law there was no highway; and the decree finds, and we think upon sufficient facts, that there was no such acceptance by the county or township authorities upon which to predicate any action by the board of supervisors extending or granting to said electric railway company authority to use or occupy the same as a public highway.   To constitute a public highway by dedication, whether statutory or otherwise, two things are necessary: there must be a dedication or offer to dedicate, and there must be an acceptance of such dedication by the proper public authorities.   (*Fisk* v. *Town of Havana*, 88 Ill. 208; *Littler* v. *City of Lincoln*, 106 id. 353; *Jordan* v. *City of Chenoa*, 166 id. 530; *Village of Augusta* v. *Tyner*, 197 id. 242; *Willey* v. *People*, 36 Ill. App. 609.)   And in such case, where the highway is claimed by dedication, the acts of both the donor and the public authority should be certain of the design to dedicate on the one part and to accept and appropriate to public use on the other.   (*Grube* v. *Nichols*, 36 Ill. 92.) The owners of the lands included in South Highland addition to Highland Park having platted the same, and having shown on the plat a number of the streets, among them the street in question, and having sold property with reference to such plat along said Railroad avenue, they and their privies and successors in title are estopped, as against purchasers and holders of property in

such addition and bought with reference to such plat, to deny the existence of such streets and passageways, as held in *Earl* v. *City of Chicago*, 136 Ill. 277, *Clark* v. *McCormick*, 174 id. 164, and other cases that have been before this court.   But these cases only go to the extent of establishing the private right of the property holder, as contradistinguished from the right of the public, to have such designated streets remain open for their access and the access of those who may have occasion to travel such streets in connection with the property thus conveyed. They do not go to the extent of declaring streets and passageways thus established as public highways, because, after all, until some affirmative act which makes certain the purpose of the municipal authorities to accept such offer of the streets as public highways, they still stand as mere offers of dedication.   It does not lie within the power of the individual who may elect to plat and sell his property with reference to such plat, to impose upon the public authorities, merely by his own act, the burden of the care and responsibility of such dedicated streets and passageways as public highways until those authorities representing the public have seen fit, by some unequivocal declaration or act, to accept and assume such burden and liability; (*Littler* v. *City of Lincoln, supra; Jordan* v. *City of Chenoa, supra; City of Chicago* v. *Gosselin*, 4 Ill. App. 570;) and until the proper municipal authorities do accept the streets thus dedicated as public highways; the fee of the streets does not vest in the municipality.   *Hewes* v. *Village of Crete*, 175 Ill. 348; *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 id. 235; *Jordan* v. *City of Chenoa, supra.*

It is said, however, by appellees, that prior to the filing of the bill in this case, Highland Park, on the 9th of May, 1899,—ten days before the filing of the bill,— extended its city limits by taking in the whole addition in which the avenue in question is located.   The mere acceptance of the plat by the municipal authorities and

the inclusion of the territory covered by the plat within the limits of the municipality was not an acceptance of the dedication of the streets and passageways shown upon the plat. The municipality still had the right to elect what streets shown upon the plat should become public highways and public charges upon the municipality with reference to their maintenance, and although certain streets had been accepted, the street in question was not one of them. *Littler* v. *City of Lincoln, supra; Jordan* v. *City of Chenoa, supra.*

It is apparent from this record that the appellee electric company is what is known as a street railway company, acting under the Horse and Dummy act or Street Railroad act, and even if it could be held that the *locus in quo* was a street or public highway, appellant should still have her injunction. While the county or municipal authorities may grant to such companies the use of the highways, it is only the use in common and in connection with the public that they may grant. Such companies can not appropriate the whole or any portion of such streets and highways to their exclusive use and control. The statute conferring the right to occupy the streets and highways contains the express limitation that such occupancy and use shall be "in such manner as not to unnecessarily obstruct the public use of such street, alley, road or highway." (Hurd's Stat. 1899, chap. 131a, sec. 1.) Where it is established by proof, or admitted, that the *locus in quo* is a public highway, the property owner, ordinarily, is presumed, in law, not to suffer damages from the proper construction thereon of such railroads, upon the theory that such use is compatible with the use in common with the public and does not impose upon such street or highway an additional servitude. But this is upon the theory that such street railways shall follow the natural contour of the surface of the streets. In the case at bar, however, for the full length of appellant's property the electric company has appropriated exclu-

sively to its own use at least twenty-five feet of the highway; has erected an obstruction in the street ranging from two to three feet high at the south end to about twenty-five feet at the north end, gradually and constantly increasing from where it begins at the south until the extreme is reached at the north.

The decree finds that appellant was the owner of the entire street, subject to the offer of dedication and subject to its acceptance by the public authorities. If it were not a public highway the public authorities had no power to confer license upon the electric company to enter upon it for any purpose. If it were not a public highway and the electric company was a street railway or operating under the street railway law, it did not have and could not acquire any right to enter upon the same, except for special reasons and under peculiar circumstances, not shown by this record to exist. (*Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295; *Same* v. *Same*, 186 id. 283.) The *locus in quo* not being a public highway and the fee being in appellant, it was the duty of the electric company to bring itself within the exception to the rule by which it might occupy other territory than a public highway and to compensate appellant for her damages before constructing its road. It may be that appellees and appellant were both mistaken as to the law, but that fact cannot alter the law or deprive the appellant of her remedy. When this bill was filed appellees were merely in the act of constructing the road-bed and trestle, and pending the litigation they have gone on and completed and put in operation the electric railroad. This they did at their own hazard, and whatever burden attaches they must bear it.

The circuit court of Lake county erred in decreeing a bond to be taken from appellees and requiring appellant to institute proceedings for her damages and in not granting the injunction. The Appellate Court erred in modifying that decree and directing that the appellee

electric railway company should proceed to condemn the right of way, and in requiring appellant to pay any portion of the costs. The decree should have been for a mandatory injunction. The decree of the circuit court of Lake county finding that there was no public highway and that appellant was the owner of the *locus in quo* (and in all other matters except that portion of the decree finding that the appellee the Chicago and Milwaukee Electric Railway Company might maintain its track upon said street or avenue and that appellant should bring proceedings to establish her damages and denying a mandatory injunction) is approved. The judgment of the Appellate Court affirming the decree of the circuit court is affirmed except in so far as it sustains the circuit court in denying the mandatory injunction and remanding the cause with direction, and modifies the decree so that the electric company should be required to proceed to condemnation of the right of way, and taxes costs against appellant, in which latter respects the judgment of the Appellate Court is reversed. The cause is remanded to the circuit court of Lake county, with direction to that court to amend its decree by granting a mandatory injunction requiring the Chicago and Milwaukee Electric Railway Company to remove said trestle-work and embankment and its said tracks and railroads from said so-called Railroad avenue in front of appellant's premises. The appellees will be required to pay the costs of this proceeding in all of said courts.

The injunction here directed shall not be held to be conclusive of the right of appellee the Chicago and Milwaukee Electric Railway Company to prosecute condemnation proceedings, as this court, in the record before it, is unable to say whether such conditions existed as authorized said electric company to deviate from the public highways.

*Reversed in part and remanded, with directions.*