W. A. Doss, State's Attorney, Appellee, *vs.* Charles A. Bunyan *et al.* Appellants.

*Opinion filed February 21, 1914.*

1. Dedication—*when question of dedication is not in the case.* Where a blank space on a plat is not designated as a street or other public ground, and there is nothing on the face of the plat to indicate any intention to dedicate the premises so shown for any public use, and no proof is made as to the intention of the proprietor, there can be no question of dedication.

2. Same—*acceptance by the proper authorities is necessary to constitute a highway by prescription.* Even if a plat be regarded as an offer to dedicate a strip of land for a street or other public ground there must be an acceptance by the proper public authorities before it can be regarded as a highway by dedication, and if the strip is conveyed by the original proprietors and the conveyance accepted before any acceptance of the offered dedication the conveyance operates as a withdrawal of the offer.

3. Highways—*the statute does not contemplate that a highway by prescription shall be created by mere use.* The changes in the statute with reference to the length of time required in order to create a highway by prescription did not contemplate any change in the character of the use required, and it is still necessary that such use shall be adverse, open and notorious, exclusive, continuous and uninterrupted for the statutory period. (*Township of Madison* v. *Gallagher,* 159 Ill. 105, *Road District* v. *Beebe,* 231 id. 147, explained.)

4. Same—*permissive use will not ripen into prescriptive right.* A highway by prescription over a strip of land owned by a railroad company cannot be said to have been created by prescription, where

the evidence shows that the use was wholly permissive and was principally a use by the company's tenants and those doing business with them, there being no other access to the tenants' places of business, and where it appears that the road was made by the tenants and that the work done by the public authorities was trifling in amount and done merely for temporary convenience of travel.

Appeal, from the Circuit Court of Piatt county; the Hon. W. G. Cochran, Judge, presiding.

Hugh Crea, Hugh W. Housum, McMillen & McMillen, and Carl S. Reed, for appellants.

LeForgee, Vail & Miller, and Herrick & Herrick, for appellee.

Mr. Justice Dunn delivered the opinion of the court:

The controversy in this case is about the existence of a public highway in the village of Hammond. The circuit court of Piatt county entered a decree enjoining the appellants from continuing the erection of a building on certain land alleged to be a public street and requiring them to remove the foundation already laid. Since the decree, in our judgment, is not supported by the evidence we have not considered the other questions which have been argued.

On June 23, 1872, the Bloomington and Ohio Railroad Company acquired title to a strip of land one hundred feet wide across the west half of section 36, town 16, north, range 5, east of the third principal meridian, being fifty feet on each side of the center line of its railroad. This title through *mesne* conveyances became vested in 1889 in the Wabash Railroad Company. In July, 1873, John K. Warren and Orlando Powers caused a part of the south-west quarter of said section 36 to be surveyed and a plat thereof to be made, which was filed and recorded in the recorder's office of Piatt county as a plat of the town of Hammond on July 22, 1873. The following is a sub-

stantial copy of a part of that plat, omitting the subdivision of the blocks into lots:

On October 22, 1875, John K. Warren and Orlando Powers and their wives conveyed to the Chicago and Paducah Railroad Company a strip of land lying along the east side of the right of way of the railroad company thirty feet wide and extending from the south side of the right of way of the Indiana and Illinois Central Railway Company to the south side of Fifth street. This strip includes the land in controversy, and the title by *mesne* conveyances has been vested in the Wabash Railroad Company since 1889. The land in controversy is the east thirty feet of the blank space shown on the plat east of the rail-

road track, containing the figure "80" and extending from Fifth street north to the railroad crossing.

There is no question of dedication in the case. The blank space upon the plat is not designated as a street, alley or other public ground and no proof of the intention of the proprietors was made. The face of the plat does not indicate an intention to dedicate the premises in question for a public use. (*Birge* v. *City of Centralia,* 218 Ill. 503.) In order to constitute a dedication, at common law, of lands for a public street, it must be made to clearly and unequivocally appear that the land owner intended to donate his land to the public for a public street and that the public have accepted it for that purpose. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561; *Town of Wheatfield* v. *Grundmann,* 164 id. 250.) Even if the plat were to be regarded as an offer to dedicate, there is no proof of an acceptance before the offer was withdrawn. An acceptance by the proper public authorities is necessary to constitute a public highway by dedication. (*Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 Ill. 155.) There is no evidence of any such acceptance before the conveyance to the railroad company of the strip in controversy by the original proprietors, and that conveyance before acceptance was a withdrawal of the offer to dedicate. *City of Chicago* v. *Drexel,* 141 Ill. 89; *Birge* v. *City of Centralia, supra.*

Appellee insists that the evidence establishes a highway by prescription and shows user by the public as a highway for fifteen years, which he insists, without more, constitutes the place a highway by virtue of section 1 of the Road and Bridge law. The railroad was built soon after the conveyance of the right of way, and the railroad company built an elevator about thirty feet square on the east side of the track, between Third and Fourth streets. When the town was first laid out the side-track was on the west side of the main track and that side was used for load-

ing, but when the elevator was built a side-track was built on the east side and it was used more than the other. This elevator remained there for a number of years and was finally sold and removed and another was built a little further north, between Third and Fourth streets. This was afterward sold and torn down and another was built further south, between Fourth and Fifth streets. All these elevators were east of the east side-track and had driveways extending still further east. Further north, between Third and First streets, were a lumber shed, a coal shed and a grain office, with scales, on the east side, the latter being just south of First street. These structures were occupied by tenants of the railroad company under leases from the latter for parts of the right of way, including parts of the ground in controversy, though the buildings themselves, with the exception of the elevator, were west of the east thirty feet of the right of way. First street, Third street and Fifth street crossed the railroad but Second street and Fourth street did not. The right of way of the railroad company was not fenced there, and the portion of it which is now in controversy was the only means of access from any of these streets to the elevator and lumber and coal sheds for persons having occasion to transact business with the railroad company's tenants there, or to haul grain, lumber or coal to or from those places. It was constantly used for those purposes. No business or dwelling houses were built facing this strip. A row of half a dozen maple trees was set out many years ago south of First street and about four feet west of the east line of the strip in question. Between these trees and the lot line was a foot-path made of cinders and ashes, with some loose boards laid down to walk on. Who set out the trees or first made the cinder walk the evidence does not disclose. A dwelling was built in 1883 fronting south on Second street, and the front part of it was used as a store. The dwelling was afterward moved away and

the store building moved back and used for a tool house. On the opposite corner was a building fronting north on Second street, which was built in 1878, and five or six years later began to be occupied as the post-office and continued to be so occupied for eight or ten years. There were some hitch-racks on Second street sufficient to accommodate three or four teams, and there were other hitch-racks on "B" street and on Second street east of "B" street, but not on the strip in question. First street was the main entrance to the village for people coming from the west, and they have always used, without objection, this strip, which gave the most convenient access to the hitch-racks on Second street west of "B" street, and to the post-office so long as it was located on Second street. Occasionally the street commissioner of the village has had the tract dragged and leveled, and this work has been paid for by the village. One commissioner stated that he did this twenty years ago, but the other testimony of this character does not go back of 1900. Another commissioner testified that he plowed two furrows on the east side of the tract. There is no testimony that any work was ever done by the authorities of the village amounting to an improvement of the strip as a highway. Whatever was done was merely for the temporary convenience of travel. There was evidence that the strip in controversy had been used principally to accommodate the lumber, coal and grain business of the tenants of the railroad company. The appellant Bunyan testified that he had paid draymen to drag and level it and had paid for hauling in a good many loads of dirt, ashes and cinders. About eight years before the hearing, Suffern & Hunt, who were operating the elevator, and the railroad company, put on the strip several car-loads of gravel, distributed along its whole length down to Fifth street. They also put in a five-inch tile to drain the strip. In 1911 an ordinance was passed by the village trustees for the construction of a sidewalk on the south side of First

street from the north-west corner of block 5 west to the east side of the Wabash railroad tracks, to be paid for by special taxation of lots touching upon the sidewalk. This walk extended only from the east side of the eighty-foot strip east of the railroad track to the track, and no lot adjoined the sidewalk except that strip. In 1912 the appellants, having obtained from the railroad company a lease of all the tract east of the railroad from First street to Third street, were preparing to erect a building covering the tract so as to exclude the public from any use thereof, when the bill in this case was filed and a preliminary injunction was issued restraining them from proceeding with the building. In the lease it was stated that it was "subject to whatever rights the public may have, if any, through the above described premises." This clause was inserted, as the officer of the railroad company under whose direction the lease was prepared and Mr. Bunyan testified, because the claims which are now made in regard to the public rights became known to such officer after appellants' intention to erect the building was announced.

The public has traveled over this tract at will for many years,—more than the number required by the statute for the establishment of a highway by prescription,—without objection or interruption by the owner, and the appellee insists that this fact, alone, constitutes the tract a highway under the statute. In this State a highway can be established only by the method provided by statute for that purpose, by dedication or by prescription. A continuous user for twenty years was necessary at common law to the creation of a highway by prescription. (*Town of Lewiston* v. *Proctor,* 27 Ill. 414; *Gentleman* v. *Soule,* 32 id. 271.) This continued to be the law of this State until in 1872, when the legislature, by section 1 of the Road and Bridge act, declared that roads used for ten years should be public highways. (Laws of 1872, p. 675.) In the revision of the Road law in 1883 it was declared that all

roads used by the public as highways for twenty years were public highways. (Laws of 1883, p. 137.) In 1887 this law was amended and the time was reduced to fifteen years. (Laws of 1887, p. 263.) The effect of these various amendments was to change the time within which a highway might be established by prescription but not to do away with any of the other requirements for that purpose. There is no difference between the use of a road as a public highway for fifteen years now required to establish a highway, and the use for twenty years required under the common law, except the difference in time. The question of prescription has frequently been before this court since the adoption of these statutes, and the decisions have uniformly been that to establish a highway by prescription the user must be adverse, open and notorious, exclusive, continuous and uninterrupted, for the period required by the statute. (*Town of Brushy Mound* v. *Mc-Clintock,* 150 Ill. 129; *Township of Madison* v. *Gallagher,* 159 id. 105; *O'Connell* v. *Chicago Terminal Transfer Railroad Co.* 184 id. 308; *Rose* v. *City of Farmington,* 196 id. 226; *Road District* v. *Beebe,* 231 id. 147; *City of Princeton* v. *Gustavson,* 241 id. 566; *Palmer* v. *City of Chicago,* 248 id. 201.) This was the law in regard to prescription before the passage of any of the statutes referred to, and there is no reason to suppose that such statutes referred to any different use as a public highway from that which had before been necessary to the creation of the public rights. It is true the cases cited do not refer to the statutes specifically, but the statute has been in force for many years, and it is not to be supposed that court and counsel in all these cases would have failed to have it in mind. In some the court evidently did have the statute in mind.

The cases of *Township of Madison* v. *Gallagher* and *Road District* v. *Beebe, supra,* and *Village of Peotone* v. *Illinois Central Railroad Co.* 224 Ill. 101, are cited as defi-

nitely holding that the statute was intended to provide a new method of creating a highway, by use alone, without reference to the character of such use as permissive or adverse. We do not so understand those decisions. In the first of them it is said that the sole claim of the appellant is that the public acquired title to the road as a public highway by prescription, and the opinion then goes on to state that the general rule is that to establish a public highway by prescription there must have been the use of it by the public for twenty years, and such use must have been adverse, etc. It was held that there was a preponderance of evidence in favor of a prescriptive right. The statute is referred to, but it is not stated that the "use as a public highway" need not be under a claim of right and adverse. It is held that if it is adverse the objection or consent of the owner is immaterial. In the case of *Road District* v. *Beebe* an instruction which told the jury that the use of a road by the public for a period of twenty years was sufficient to establish a public highway, though the road may not have been worked or otherwise recognized by the authorities as a public road, was claimed to be erroneous because it was not qualified by a statement that such use must be adverse, exclusive, continuous and under claim of right, but it was held that inasmuch as the jury were otherwise fully instructed as to the character of the use necessary to establish the public highway, they would understand that the use of the road by the public for twenty years mentioned in that instruction was such a use as was necessary, under other instructions given, to create a highway by prescription. In *Village of Peotone* v. *Illinois Central Railroad Co. supra,* the question of the character of user required under the statute is not discussed, but it is said that the evidence established a case of common law prescription.

The evidence here as to user is that it was wholly permissive. The tenants of the railroad company, and those dealing with them, used this strip as a road to the various

places where the business of the tenants was transacted. It was necessary for them to do so. There was no other access. The road was made by the tenants, the track was that of their vehicles and the vehicles of those dealing with them. The work done by the village was trifling in amount and value. There is nothing to indicate that the railroad company or its tenants had any reason to suppose that any one claimed a right to travel over the road. They did not fence it up and put in gates, and could not without great inconvenience. Neither did they prevent the public from passing back and forth, but in so doing the public were not using the road as a public highway but were using it by the license of the owner. It is unnecessary to cite authorities to the proposition that permissive use cannot create a prescriptive right.

The decree will be reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*