(No. 28298.—

HOMER SWINFORD, Appellee, *vs.* NICHOLAS ROPER *et al.,* Appellants.

*Opinion filed January 17, 1945—Rehearing denied March 19, 1945.*

L. LELAND HAMILTON, and CHARLES DURFEE, both of Golconda, for appellants.

CLARENCE E. SOWARD, of Elizabethtown, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee filed a complaint in the circuit court of Pope county seeking an injunction restraining appellants from interfering with the use by appellee of a certain roadway. It was claimed in the complaint that it was a public roadway and had become such by prescription.

Appellant Madge Roper is the owner of the south half of the northwest quarter and the east half of the southwest quarter and the east 55 acres of the west half of the southwest quarter of section 15 in that county. Across the north end of the last two described tracts there is and has been for many years a roadway about 20 feet in width. Appellee's land lies west of the north end of the 55 acres and adjacent thereto, so that this east and west road, which extends across appellants' land, reaches appellee's premises. It extends no further west. On the east it extends to a public highway along the east side of appellants' land. At two points on this road appellants have from the time it was first used, maintained bars or gates, referred to in the record as "gaps," under which designation they will be hereinafter mentioned. One of these "gaps" is at the west

end of the road next to appellee's premises and the other is at east boundary of appellants' premises.

Appellee's complaint alleges that the roadway was a public highway and has been used as such generally under a claim of right for more than twenty years. He alleges that appellants closed the road and refused to permit appellee to travel over it. Appellants denied the road ever was a public road and asserted that its use by appellee and others was permissive.

Appellants filed a cross complaint alleging the road is a private roadway and sought an injunction restraining appellee from removing the fence placed there by appellants. Appellee's evidence is that he traveled the roadway without interruption from the time he purchased the land; that there had been, at all times, the "gaps" at each end; that he got tired of putting up the "gaps" so he just threw them down; that the trouble started when he did not keep up the "gaps" and appellants closed the road and prevented his access to the highway from his home.

Several witnesses testified to having traveled over the disputed road without interruption; some of them found "gaps" or "gates" at each end and others did not. Appellant Nicholas Roper testified he talked to appellee when his (Roper's) wife bought the farm; that he told him he could travel the road if he would keep the "gaps" closed when cattle were in the fields adjacent to the road; that appellee, a short time before he, Roper, closed the road, told him it was too much trouble to keep the "gaps" closed and that he left them open and appellants' cattle got out, and that thereafter Roper refused to permit appellee to cross over his wife's land.

It seems a man named Scott at one time owned all this land now owned by appellants and appellee and when he sold the land now owned by appellee he agreed to, or permitted, the use of the roadway in dispute by appellee as a means of ingress and egress from the highway to the

land sold. No deeds conveying either appellants' or appellee's land contained any reservation or conveyance of an easement for a roadway over the strip of land involved here, and the evidence is that at all times when the owners of the east 135 acres of the southwest quarter of section 15 pastured any part of the land, gates or "gaps" were maintained at each end of the field to prevent livestock from getting out of the pasture.

The chancellor found the road to be a public highway and granted the injunction to appellee and dismissed appellants' cross complaint. He also provided in the decree that the appellee should construct a substantial barbed-wire fence along the south side of the road.

This is a case where the chancellor heard and saw the witnesses. To justify a reversal of the decree, it is necessary that it appear that it is contrary to the manifest weight of the evidence. (*Koch* v. *Mraz*, 334 Ill. 67; *Cook* v. *Wolf*, 296 Ill. 27.) Under the statutes of this State, all roads in the State laid out pursuant to the laws of the State, or which may have been established by dedication or used by the public as highways for fifteen years, are declared to be public highways. (Ill. Rev. Stat. 1943, chap. 121, par. 152.) It is not claimed by appellee that the road here is one by dedication, but it is claimed it is a public road by prescription, since it has been traveled by the public by uninterrupted user for more than fifteen years. Where such condition exists, the use and enjoyment of a road by the public for the time required by the statute creates the presumption of a grant of a way by prescription and, in the absence of proof that the use by the public was permissive rather than adverse, such road is held to be a public road.

The test lies not in the number of persons actually using it but the character of the use,—that is, whether the public generally had free and unrestricted right to use the road. If it is shown by the evidence that the road has been

openly and notoriously used as an open and public highway in common by the public continuously without interruption for the statutory period, it will be considered a public highway. (*Mudge* v. *Wagoner,* 320 Ill. 357; *Lee* v. *Dickman,* 316 Ill. 529; *Bontz* v. *Stear,* 285 Ill. 599; *Phillips* v. *Leininger,* 280 Ill. 132.) Where such use is shown, the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with claim of right in the public. *Lee* v. *Dickman,* 316 Ill. 529; *Law* v. *Neola Elevator Co.* 281 Ill. 143.

The question before us is whether the more than fifteen-years' use of this roadway is of such a character as to bring it within the rule governing the establishment of a public highway. Where land is originally laid out and used as a private way for the use of adjoining landowners, its use by the public as well does not necessarily make it a public highway where the owner keeps it up and the public use is not clearly hostile or under a claim of right. To establish a prescriptive right in the public where it is claimed that such property constitutes a part of a public highway, it must be shown that a well-defined line of travel existed over the property for a period of fifteen years. The use must be adverse, under claim of right, continuous and uninterrupted, with the knowledge of and without the consent of the owner of the estate. Permissive use cannot ripen into a prescriptive right. *Koch* v. *Mraz,* 334 Ill. 67; *Bontz* v. *Stear,* 285 Ill. 599; *City of Chicago* v. *Galt,* 224 Ill. 421; *Falter* v. *Packard,* 219 Ill. 356; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 Ill. 561.

There is testimony of witnesses that they traveled over the road without having to open "gaps." Most of the witnesses, however, testified to the road being closed by "gaps" during the time the land south of the road was being pastured. Fred Swinford, brother of appellee, testified that

he owned the land now owned by appellants from 1924 until sold to appellants; that when appellee bought his land in 1930 he, the witness, was maintaining "gaps" at each end of the road and that he gave appellee permission to travel the road. Although appellee denies that he was given this permission, he does not deny that the "gaps" were in place and maintained at that time and since, until this trouble arose. Fred Swinford also testified that during the time he owned the land he used the land south of the road for pasture and maintained "gaps" which he opened and closed, and that they were kept closed when the cattle were pastured. Appellee testified that he offered to buy the road from appellants in 1938 and that the difficulty in this case arose because he had grown tired of putting up the "gaps;" that the congregation of cattle around them caused the mud in bad weather to be more than shoe-top deep.

There is no testimony that a road commissioner or any other public official did any maintenance work on the road. Appellee testified that he obtained permission of the appellants to grade the road and that appellants promised to pay one half of it but had not done so. It also appears that a hay shed, owned by appellants, stands on this road and that, while for more than thirty years the road has been at all times open to travel, yet that travel was, for a greater portion of the time, limited by the use of bars or "gaps." It appears from this record that the principal value of the road is to appellee and his family and those who desire to visit them. The road ends at the east boundary line of appellee's land. It is, in other words, what is known as a "dead-end road." The proof in this record does not show that use was made of it by the general public that was adverse, under claim of right, continuous and uninterrupted without the consent of the owner. But one witness testified to frequent use of the road and that was a mail carrier who had occasion to use it when

special-delivery mail required delivery to appellee or a person living in the house now owned by appellee.

It is apparent from the record before us that the use of this road has been by the consent of appellants, and it was not until appellee refused and neglected to put up the bars or "gaps" at the end of the road that appellants closed the road with a permanent fence. We are of the opinion that the testimony in this record does not establish a road by prescription in accordance with the rules set out in the cases hereinbefore cited.

The finding of the chancellor that the road was a public highway by prescription is, in our opinion, contrary to the manifest weight of the evidence. It necessarily follows that the chancellor erred in entering a permanent injunction restraining appellants from obstructing the road. The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the complaint.

*Reversed and remanded, with directions.*