(No. 37934.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ADOLPH J. WAITKUS, Appellant.

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

JACOB SHAMBERG and JAY ERENS, both of Chicago, for appellant.

DANIEL P. WARD, State's Attorney, of Chicago, (EDWARD J. HLADIS and JOSEPH V. RODDY, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County in favor of plaintiff perpetually enjoining defendant from obstructing a strip or road which plaintiff alleged to be a public highway under the statutes of Illinois on the basis that said road had been in general use by the public as a public highway for more than 15 years, adverse to defendant's ownership and under a claim of right in the public to do so.

This court has jurisdiction by direct appeal, a freehold being involved in the decision.

The road in question was shown running north and south just west of the east line of lot 12 on the plat of County Clerk's Division of section 24, T. 37 N., R. 11 E., recorded April 20, 1880, and thereon is marked "Private Road." No evidence was introduced showing any statutory dedication of the roadway. From a survey of said road, it is a dirt and gravel road, 7 to 10 feet wide, running in a generally north and south direction parallel to the east line of lot 12 and about 15 to 20 feet west of said lot line. Directly to the east of lot 12 is forest preserve property. The road commences on the north at Route 83 and runs south about one-half mile to the south end of lot 12. A map in evidence shows that at the south end of lot 12 the road turns in an east and southeasterly direction and proceeds for about one-quarter mile until it intersects with Will-Cook road, which runs in a north-south direction.

Title to lot 12 was conveyed to defendant and included the road in question. Each year, 1900 through 1958, general taxes have been levied and collected on lot 12. The township authorities have never included the road in any request for refund or allotment of motor fuel taxes.

Immediately to the south of the point where the road turns to the east, Laura Mathy owns and occupies a farm and uses the road as access to Will-Cook Road. Prior to

placing of the barricade, she also used it as access to Route 83. Defendant, since 1955, has maintained a home on lot 12 which is 480 feet south of the north lot line of lot 12 and to the west of the road in question. Defendant reaches his home by entering the road off Route 83 and driving south on it until it intersects his drive. Defendant has spent money for graveling and grading the road and for snow removal since moving there in 1955.

Prior to 1958 the road was used as a "lover's nook." In order to stop this and to prevent dumping on his property, in August, 1957, defendant began to erect barricades on the road about 2 blocks south of his drive and at the junction with Route 83.

Various witnesses testified to use of the road since 1907. This testimony was largely of witnesses who went to the Mathy farm to visit or to buy eggs or to pick berries. The road was narrow and largely unimproved, closely grown with shrubs and trees and had no definite lines of travel. The evidence was in conflict as to whether two cars could pass on it.

The testimony as to maintenance of the road was vague and indefinite. Several witnesses testified they had seen gravel placed on it but were unable to say who did the work. There was some testimony the township commissioner may have placed some stone on the road or done some minor work.

The master heard the evidence and found that the use of the roadway for the 35 years prior to 1958 was not for the general purpose of public travel but for the purpose of servicing the Mathy farm and he recommended a decree in favor of the defendant. The chancellor sustained objections to the master's report and entered a decree in favor of plaintiff, perpetually enjoining defendant from obstruction of the strip in question.

Plaintiff claims the road in question to be a public highway under section 2—202 of the Illinois Highway Code,

which provides in pertinent part: "Highway—any public way for vehicular travel which has been laid out in pursuance of any law of this State or of The Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years, * * *." Ill. Rev. Stat. 1961, chap. 121, par. 2—202.

Plaintiff does not claim nor does the evidence show any public highway by law or dedication. There is no statutory or common-law dedication. Plaintiff's sole reliance is that the road "has been used by the public as a highway for 15 years." To constitute such a road as a highway there must be a user for the statutory period which is open, continuous and uninterrupted, (*Needham* v. *Village of Winthrop Harbor,* 331 Ill. 523; *Gietl* v. *Smith,* 320 Ill. 467,) and under a claim of right in the public. *Koch* v. *Mraz,* 334 Ill. 67; *Stevenson* v. *Meyer,* 10 Ill.2d 335.

The use of the road here in question was almost entirely for the purpose of going to and from the Mathy farm and it was not used under a claim of right by the public generally. Travel for such restricted and limited purpose does not constitute user under a claim of right in the public generally. We so held in *Koch* v. *Mraz,* 334 Ill. 67, where the road was used only as a means of access to a group of summer cottages and a hotel. To the same effect are *Swinford* v. *Roper,* 389 Ill. 340, and *Stengl* v. *Starr Bros.* 370 Ill. 118.

The characteristics of the particular road here in question were such that travel over it would not constitute notice of a claim of right in the public generally over it. The photographs in evidence show the road was narrow, largely unimproved, and closely overgrown with shrubs and trees. Witnesses testified it was more like a path or trail with deep ruts and fallen trees, with holes and washouts. This court frequently has pointed to the condition of a road as negating any inference that the public at large claimed the right

to travel it. *Town of Brushy Mound* v. *McClintock*, 150 Ill. 129.

The testimony on the subject of public maintenance was vague. A proper evaluation of the evidence is that in a few isolated instances the township commissioner may have done some minor work on the road at different times. There is no showing of any continued or systematic maintenance for 15 years or any period of time. These acts fall far short of any claim of right in the public.

Many acts of dominion of defendant over the property inconsistent with a claim of right of the public were shown. In 1943, defendant's father posted signs on the road of "No Trespassing," "Private Property," and "Keep Out," which remained posted until after this litigation was commenced. Defendant spent substantial sums of money each year over a period of years to maintain the road. Such acts of dominion and control are inconsistent with a claim of right by the public. *City of Chicago* v. *Borden,* 190 Ill. 430; *Needham* v. *Village of Winthrop Harbor,* 331 Ill. 523; *Doss* v. *Bunyan,* 262 Ill. 101.

The public authorities have done acts inconsistent with a claim of right in the public by taxing the road in question as private property, by the county taking a dedication of a part of the road in 1936 in widening Route 83, and by never basing a request for motor fuel tax on the road.

The particular facts here in evidence show that this road never was used by the public under a claim of right within the meaning of the applicable statutory provision. The court should have denied the prayer to enjoin defendant from obstructing the road. Accordingly, the decree of the superior court must be reversed.

*Decree reversed.*