(No. 11531.—Reversed and remanded.)

WALTER D. PHILLIPS *et al.* Appellants, *vs.* GEORGE LEININGER *et al.* Appellees.

*Opinion filed October 23, 1917.*

1. HIGHWAYS—*when freehold is involved in suit to enjoin obstruction of highway.* A freehold is involved in a suit to enjoin the obstruction of a highway where the issue is whether or not there is a highway over the land in controversy.

2. SAME—*a highway may be acquired over county property by prescription.* A county is not exempt from the operation of the Statute of Limitations in a controversy as to whether the public has acquired a prescriptive right for a highway over property belonging to the county.

3. SAME—*what is essential to a common law dedication.* To constitute a common law dedication of land to a public use there must be an intention on the part of the land owner to dedicate and an acceptance of the dedication by the public, but, so far as the land owner is concerned, the dedication is complete whenever the intention to dedicate appears either by declaration or by conduct.

4. SAME—*when intention to dedicate a highway to public use will be implied.* The law will imply an intention to dedicate a highway to a public use from any acts of the owner which indicate an intention to so appropriate his property, and where his conduct has been such as to lead an ordinarily thoughtful person to infer an intention to make a dedication, to accept the same for a public use

and to use it as a highway, the dedication becomes complete and cannot be recalled by the land owner.

5. SAME—*what will constitute public highway by prescription.* A road which has been open as a public highway to all the people and has been known and used as such in common for the statutory period is a public highway, the test being, not how many persons actually used the highway but how many had a free right in common to use it; and the fact that such road is recognized by the township authorities and is worked. the same as the other roads strongly indicates that it is a public highway.

6. LIMITATIONS—*when public property is not exempt from operation of the Statute of Limitations.* The exemption in favor of counties, cities, towns and other minor municipalities from the operation of the Statute of Limitations extends only to matters affecting their public rights as distinguished from private and local rights, with respect to which such municipalities, the same as individuals, are subject to the operation of the statute.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

LANDON & HOLT, (JOHN B. FRUCHTL, of counsel,) for appellants.·

EDWARD J. BRUNDAGE, Attorney General, (EDWARD H. TAYLOR, and FRANKLIN A. DENNISON, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellants, as commissioners of highways of the town of Norwood Park, filed their bill in chancery in the circuit court of Cook county against appellees, the State Board of Administration, who are in charge of the Chicago State Hospital, to enjoin them from obstructing an alleged highway across the hospital grounds. The bill charges that in ·1886 a highway was laid out across the hospital grounds, (then known as the Dunning Institution,) and ever since that time has been maintained, graded, improved, managed and controlled by the highway commissioners of the town of Norwood Park and the work done and improvements

made thereon paid for with the funds of such town; that ever since that time said highway has been in general use as a public highway; that appellees have attempted to close the same by placing gates across the same, and the bill prays for an injunction restraining them from obstructing such public highway. A temporary injunction was granted as prayed. Appellees answered the bill, admitting that they composed the State Board of Administration and as such have had control of the Dunning Institution for the past three years, but denying that a highway was established over the strip of land in controversy in 1886, or that the same had been maintained, graded and improved under the direction and supervision of the highway commissioners of the town of Norwood Park, or that the same had for a period of twenty-five years been used openly, adversely, exclusively and uninterruptedly as a public highway. They alleged the ownership of the land in controversy was in the State of Illinois, and that they, as the State Board of Administration in charge of such land, had the right to close up such alleged highway. A replication was filed to the answer and the cause was tried before the court, which entered a decree finding the issues joined in favor of appellees, dissolved the temporary injunction and dismissed the bill for want of equity. The cause was appealed to the Appellate Court for the First District, and that court, being of the opinion that a freehold was involved, has transferred the cause to this court.

The issue as to whether or not there is a highway over the land in controversy involves a freehold and the cause was properly transferred to this court. *Roloson* v. *Barnett,* 243 Ill. 130.

Appellants rely upon a common law dedication of the land in question as a public highway and a prescriptive right in the public to use such highway. Appellees insist there is no sufficient evidence of a common law dedication of the highway, and that as the land in controversy is State

property the public can acquire no right to a highway over the same by prescription, for the reason that the Statute of Limitations and *laches* do not run against the State as to property held by it in trust for a public use.    Appellees cite the following cases in support of this contention: *County of Piatt* v. *Goodell,* 97 Ill. 84; *Russell* v. *City of Lincoln,* 200 id. 511; *City of Chicago* v. *Galt,* 224 id. 421; *Town of Brushy Mound* v. *McClintock,* 150 id. 129; *City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co.* 152 id. 561; *Township of Madison* v. *Gallagher,* 159 id. 105; *Illinois Central Railroad Co.* v. *City of Bloomington,* 167 id. 9; *O'Connell* v. *Chicago Terminal Railroad Co.* 184 id. 308; *Falter* v. *Packard,* 219 id. 356.    In those cases the property involved was held in trust for a particular use for the benefit of the general public, and the rule there announced has no application to cases such as the one at bar, where the property is held by a municipality for the special benefit of the inhabitants of that particular municipality.    The exemption of the State, counties, cities, towns and other minor municipalities from the operation of the Statute of Limitations extends only to matters affecting their public rights as distinguished from private and local rights, with respect to which such municipalities, the same as individuals, are subject to the Statute of Limitations. (*County of Piatt* v. *Goodell, supra; Board of Supervisors* v. *City of Lincoln,* 81 Ill. 156; *People* v. *Town of Oran,* 121 id. 650.)    In *Brown* v. *Trustees of Schools,* 224 Ill. 184, in speaking of what was meant by "public rights" as used in the decisions, we said: "The question in this case is whether there is an implied exemption from the Statute of Limitations in favor of trustees of schools with respect to property held for the use of a particular school district, and that depends upon the meaning of the term 'public rights' as used in the decisions.    In one sense all property held by a municipal corporation is held for public use, and the public at large, or some portion of the public, have

rights or interests in such property. It may be held for the use of the people of the State generally, or the use may be limited to the inhabitants of the local subdivision or municipality, such as the city, village or school district, and the question whether the statute applies in the latter class of cases was considered in *County of Piatt* v. *Goodell, supra.* That case involved the title to swamp lands owned by the county, in which the inhabitants of the county were interested. It was held that the public right and public use must be in the people of the State at large and not in the inhabitants of a particular local district. It was said that there is a well founded distinction between cases where the municipality is seeking to enforce a right in which the public in general have an interest in common with the people of such municipality, and cases where the public have no such interest; that the public generally had no interest in the tract of land in question in that case in common with the voters and tax-payers of Piatt county, and that the county for that reason was subject to the limitation laws." We think the same may be said of the land in controversy here, and that as to such property the county of Cook, the same as an individual, is subject to the Statute of Limitations. The fact that the title of the property is now vested in the State of Illinois is of no importance for the reason the highway was established before the State acquired the property, and when it did so it took it subject to whatever easements or other incumbrances the county of Cook, the prior owner, had placed thereon.

The land in question through which the road runs is situated in section 18, township 4, north, range 3, east of the third principal meridian, in the township of Norwood Park, and prior to the year 1912 was owned, controlled, managed and used by the county of Cook as a county poor farm and institution for the treatment of the insane of such county, and was commonly known as the Dunning Institution. For the past three years it has been maintained

by the State of Illinois as a hospital under the supervision
of the State Board of Administration. The grounds of
the Dunning Institution comprise 234 acres of land in the
south half of section 18, and are bounded on the south by
Irving Park boulevard, which is on the south line of the
section. The right of way of the Chicago, Milwaukee and
St. Paul Railroad Company extends through the grounds
from Irving Park boulevard in a northerly direction about
1300 feet west of the east line of the section. The road in
question adjoins the railroad right of way on the west, and
extends from Irving Park boulevard on the south to Mont-
rose boulevard on the north line of the grounds. In 1886
the county commissioners of Cook county acquired a tract
of land lying immediately south of the old county farm,
spoken of as the Townsend tract. At the time this land
was purchased there was a road on the north and south
line between this tract and the land then comprising the
county farm. It appears from the records of the county
board of Cook county that at a meeting held on April 13,
1885, its committee on roads and bridges made a report,
stating it had a communication from the highway commis-
sioners of the township of Norwood Park representing that
about six years before a public road had been duly laid out
and opened on the north and south line between the county
farm and the Townsend tract; that the highway commis-
sioners were of the opinion that it would be more desir-
able to have a road parallel the west line of the railroad
right of way, and that they would vacate the road along
the Townsend tract if the county board would give the
town of Norwood Park a right of way 60 feet wide over
its land along and parallel to the railroad right of way
above mentioned, which report was duly received by the
county board and concurred in by it. It further appears
from such records that on May 25, following, the highway
commissioners of the town of Norwood Park made a re-
port to the county board of Cook county setting forth that

they had vacated the road between the Townsend tract and the county farm. It further appears from the evidence that after this order was entered, and in the year 1886, the road commissioners of Norwood Park and four or five members of the board of county commissioners of Cook county met at the place in question and the road in controversy was staked out, and ever since that time, until closed by appellees, had been in general use by the public as a public highway, although it was more particularly used by those who brought produce to the institution located on the grounds. At the time the road was surveyed it was graded by the highway commissioners of Norwood Park, and since that time, until closed, has been constantly maintained, graded and improved by them as one of the public roads of· such township. During all of the time since it was laid out it has been continuously in general use as one of the public highways of such township until closed by appellees, in 1915.

In order to constitute a common law dedication of land to a public use two things are essential: First, an intention on the part of the land owner to dedicate the same to a public use; and second, an acceptance of the same by the public. The vital and controlling thing is the intention of the land owner to dedicate his land to a public use. Whenever this is made to appear, either by a formal declaration to that effect or by acts and conduct from which such intention may fairly be presumed, the dedication is complete in so far as the land owner is concerned. (*City of Chicago* v. *Chicago, Rock Island and Pacific Railway Co. supra.*) The law will imply an intention to dedicate land to a public use from any acts of the owner indicating an intention to so appropriate his property, and where his conduct has been such as to lead an ordinarily discreet and thoughtful person to infer an intention to make a dedication, and the public, relying upon such act as a dedication, accept the same for a public use and use it as a public highway, the dedication becomes complete and cannot be recalled by the land owner.

(*Seidschlag* v. *Town of Antioch,* 207 Ill. 280.)    In this case the records of the county board which show it concurred with the report of its committee recommending that the proposition of the commissioners of highways of the town of Norwood Park to vacate the road across the Townsend tract on condition that a new road should be established over the strip of ground in controversy be accepted, and the subsequent report showing that the highway commissioners of the town of Norwood Park had proceeded to vacate the other road, and the act of the county commissioners in going to the place in question and participating with the highway commissioners of the town in laying out the new road, and the continued and uninterrupted use of the same by the public as a highway since that time, we think sufficiently show an intention on the part of the county to dedicate the strip of ground in controversy as a public highway.   While there is no record evidence, other than that above mentioned, of the laying out of such highway, it further appears that the records of the highway commissioners of the town of Norwood Park have been lost, so that they could not be produced upon the hearing and satisfactory proof made as to what they contain with reference to this matter.   But we do not deem formal record proof of the laying out and acceptance of such highway by the highway commissioners of Norwood Park township necessary in this case.

The evidence further shows that as soon as the highway was laid out the commissioners of the township proceeded to grade the same and otherwise improve it as one of the highways of such township, and that ever since that time it has been worked, maintained and cared for by such highway commissioners the same as any other public highway in the township and the expense of such maintenance borne by that township, and during all of the time it has been in general use as a public highway of such township.   While it is true that it has been more particularly used by those

bringing produce to the Dunning Institution, it has nevertheless been open for the use of all who desired to pass that way and to the public generally. The test is, not how many persons actually used the highway but how many had a free and unrestricted right in common to use it, and where the evidence shows that a road is open as a public highway and has been known and used as such in common by all the people for the statutory period, this will constitute it a public highway. The facts that a road is recognized by the authorities of the township as one of its public highways and worked the same as other roads in the township and has been continuously in use by the general public, strongly indicate that it is one of the public highways of such township. Under our statute the continued and uninterrupted use of land as a highway for the statutory period, in the absence of proof to the contrary, will be presumed to have been under a claim of right, and will create a prescriptive right in favor of the public in such highway without further proof of acts of recognition on the part of the authorities. "Where the statute expressly says that use of a road as a highway by the public for a certain number of years makes it a public highway, we cannot see why such use is not evidence of as high a character as are acts of recognition by the town authorities. Where the public pass more or less frequently for the statutory period over a highway as often as they have occasion to pass in that direction, and where the amount of travel considered with reference to the surrounding circumstances shows that the public exercise the right of using the land as and for a highway, such user authorizes the presumption of a grant or the presumption that the road was laid out by competent authorities." *Township of Madison* v. *Gallagher, supra.*

There can be no question, under the evidence in this case, but that ever since the road was surveyed and laid out the same has been supervised and maintained by the highway commissioners of the town of Norwood Park un-

der a claim of right as one of the public highways of that township, and also that during all of the time since it was laid out the land has been used as a highway under a claim of right by the public, and that such use has been continuous and uninterrupted and with the full knowledge of the owners of the land in question. In *Village of Middletown* v. *Glenn,* 278 Ill. 149, we held that the use by the public of a strip of land as a highway for a period of fifteen years constitutes the same a public highway, and that where the same was bounded on one side by a hedge fence for more than twenty years such fence was properly held to be the boundary line of such road. In *Hansen* v. *Green,* 275 Ill. 221, we held that where the evidence showed there was a regular traveled road across a tract of land used by the public generally whenever they saw fit, for a sufficient length of time to establish a public highway over it, it was not necessary to show that anyone made public proclamation of a claim of right to use such highway but that such fact might be shown by circumstances. In this case we have the use of land in controversy as a public highway for a period of more than twenty-five years. The record evidence of an intention to dedicate land for highway purposes in consideration of the vacating of another highway, together with acts of the public authorities in laying out the highway and grading, maintaining and improving the same as one of the highways of such town for a like period of time, coupled with the general and uninterrupted use of the same as a public highway by all who desired to pass that way for more than twenty-five years, is, we think, under the circumstances, sufficient to establish it as a highway.

For the reasons given the decree of the circuit court must be reversed and the cause remanded to that court, with directions to enter a decree granting to appellants the relief prayed for in their bill and making the temporary injunction granted permanent.

*Reversed and remanded, with directions..*