(No. 11409.—Decree affirmed.)

MATTHEW A. LAW, Appellee, *vs.* THE NEOLA ELEVATOR COMPANY *et al.* Appellants.

*Opinion filed October 23, 1917.*

1. APPEALS AND ERRORS—*when freehold is involved on appeal in a road obstruction case.* Whenever the issue in a road obstruction case in the circuit court is whether the public or an individual has a perpetual easement for a roadway over a certain tract of land a freehold is involved, and the Appellate Court has no jurisdiction to decide such an issue.

2. SAME—*what is necessary before Supreme Court will consider new objection as to want of necessary parties.* Before the Supreme Court will consider an objection not previously raised as to the want of necessary parties it must appear that the failure to make the omitted person a party will result in depriving that person of some material right.

3. PRACTICE—*when it is not error to allow amendment of bill after proofs are taken—waiver.* It is not error to allow an amendment of a bill after the proofs are taken and the case is ready for argument without requiring the amendment to be first submitted to the court in writing and verified by affidavit showing why it was not sooner filed, where the amendment is germane to the bill and the evidence discloses its propriety, and if the defendants make no objection, offer no further evidence and do not answer the amended bill they waive their right to argue on appeal that they were prejudiced thereby.

4. HIGHWAYS—*burden is on party denying existence of highway to show that use by public was by license.* Where the proof shows uninterrupted use by the public of an alleged highway or street for the period necessary to establish a highway by prescription, the burden is upon the party denying the existence of such

highway to show that such use was under some license inconsistent with the claim of right by the public.

5. SAME—*fact that road used by public ends at a man's farm or place of business will not prevent its becoming a public highway.* It does not follow because a road is a *cul-de-sac* or ends at a man's farm or place of business and is used by the public in their dealings with the party at the end of the road that it cannot become a public highway by prescription.

6. SAME—*what is test of public use to create highway by prescription.* The test of a public highway is not as to the limited use to which the road may be subjected nor as to the number of people that may use it, but rather as to the right of the public to use it as a road when they have occasion to do so.

APPEAL from the Circuit Court of Carroll county; the Hon. R. S. FARRAND, Judge, presiding.

BREARTON & WALTER, for appellants.

F. J. STRANSKY, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

In this suit appellee filed his bill in the circuit court of Carroll county to enjoin appellants from building or placing any structure or other obstruction upon an alleged roadway across lot 12, block 10, in the city of Savanna, connecting his elevator located on lot 11 with Murray street, in said city, and to compel appellants to remove certain cement walls and other work constructed upon said roadway. Appellee charged that for more than thirty years a right of way for teams, wagons and carriages had existed appurtenant to the west one hundred feet of lot 11, in said block 10, (now owned by appellee,) over and across lot 12, which lies immediately south of lot 11, which right of way had been for more than thirty years an easement over lot 12 and appurtenant to lot 11. Appellee also set forth in his bill that about two years prior to the filing of his bill the appellant the Neola Elevator Company was threatening to obstruct said roadway by building therein a grain-bin, to

which appellee objected and was about to proceed to enjoin the placing of the bin in said roadway; that the matter in controversy, being the right of appellee to said roadway, was then fully settled by agreement, whereby, in consideration of appellee's agreement to permit said company to extend the grain-bin for the distance of one and a half feet on the west side of said roadway on lot 12 and to forbear his threatened suit, it then agreed that at no time thereafter would it question appellee's right to said roadway or in any way interfere with the same. A temporary injunction was granted and appellants answered the bill. After a report of the proofs had been submitted by the master in chancery on a reference to him for that purpose, appellee, by leave of court, amended his bill by further alleging that the said roadway for more than fifty years last past had been used by the general public as a public highway, which had been established by a continuous use by the public for that length of time as a highway, and which use was open, notorious, adverse, peaceable and uninterrupted. No further evidence was submitted, and the court found the issues for appellee and rendered a decree making the injunction perpetual. The appellants prayed an appeal to the Appellate Court for the Second District, and that court transferred the cause to this court on the ground that a freehold is involved.

Appellee insists that inasmuch as the question of estoppel *in pais* against appellants is one of the issues in the case, by appealing to the Appellate Court appellants waived their right to raise the question involving a freehold, and that no freehold is involved in the question of estoppel. A freehold is necessarily involved in this suit, within the contemplation of the constitution and the statute, because the result of the decree, regardless of the question whether the decision is based on estoppel or by right of prescription, is that appellee or the public gains or loses a perpetual easement for a highway over lot 12, and because the title to

281 — 10

the easement is so put in issue by the pleadings that the
decision of the case necessarily involves a decision of such
issue. (*Becker* v. *Fink,* 273 Ill. 560; *Town of Audubon*
v. *Hand,* 223 id. 367; *Espenscheid* v. *Bauer,* 235 id. 172;
*Roloson* v. *Barnett,* 243 id. 130.) Whenever the dispute in
a road obstruction case is whether the public or an individ-
ual has a perpetual easement for a roadway over a certain
tract of land a freehold is involved, as expressly decided
in two of the above cases, and the Appellate Court has no
jurisdiction to decide such an issue if the lower court had
jurisdiction to try such issue.

Appellants have assigned as error the action of the cir-
cuit court in decreeing that a public highway exists over
lot 12 without having first compelled appellee to make the
owner of the fee simple title a party defendant to this suit.
The proof shows that appellant the Neola Elevator Com-
pany is a lessee and tenant of the Chicago, Milwaukee and
St. Paul Railway Company, the owner of said lot 12, and
that appellant James H. Plattenberger was the contractor
or employee of the Neola Elevator Company in the con-
struction of the structures complained of by appellee as
obstructing his roadway. The railway company was not
made a party to appellee's bill. No such question as want
of necessary parties appears to have been raised in the cir-
cuit court and no such question was sought to be raised by
any assignment of error in the Appellate Court, and was
only raised in this court after the Appellate Court had
transferred the cause on the ground that a freehold is in-
volved. Such an objection, taken for the first time in this
court, is not favorably received, and to be of avail in such
case it must appear that the failure to make the omitted
person a party will result in depriving that person of some
material right. (*State Nat. Bank* v. *United States Life Ins.*
*Co.* 238 Ill. 148.) There is no estoppel by decree or judg-
ment against the railway company in this case. There is
no complaint in this suit about any act on the part of the

railway company, and the decree in no way purports to bind it or to affect its title to the premises. The railway company could not be estopped by the decree in this case from asserting a right against appellee to claim lot 12 as not subject to any easement, public or private. The Neola Elevator Company did not see fit to have the railway company called in as a party to defend the suit, and the record does not show that it was even given notice that its lessee's title was assailed. Besides, the Neola Elevator Company is not in a very good position to make a claim for damages on any ground whatever against the railway company by reason of its contract with appellee to not interfere with or dispute the right of easement claimed by him. As appellants did not raise the question in the circuit court we will not further consider whether any necessity existed for making the railway company a party.

It is also insisted by appellants that the court committed reversible error in permitting appellee to amend his bill after the proofs were taken and the case was ready for argument. No objection to the amendment was made by appellants. There was no suggestion to the court that appellants were taken by surprise by the amended answer or that they had any further evidence they desired to offer. No further evidence was offered and there was no application for a continuance but the cause was immediately submitted upon the evidence already taken. The evidence already before the court was sufficient to support the motion for leave to make the proposed amendment, and no further or other relief was prayed than that in the original bill. It was not necessary, therefore, that the proposed amendment to the sworn bill for injunction should be first submitted to the court in writing, verified by affidavit showing why it had not been sooner filed. (*Bauer Grocery Co.* v. *Zelle,* 172 Ill. 407.) The subject matter of the amendment and the relief sought thereunder were germane to the original bill, and the evidence before the court disclosed

the propriety of amending and broadening the pleadings. The court committed no reversible error in permitting the amendment to the bill. Appellants had a right to further answer the amended bill and to introduce any further evidence they might have, if they saw fit to do so. There being no suggestion to the court of any such desire and no objection to the amendment or the making of the same, appellants have waived their right to argue now that they are in any way prejudiced thereby.

The further contention of appellants is that the court erred in finding that said traveled way became a public way by user, because the proof shows that the use appears to have been permissive rather than adverse. It appears from the weight of the evidence, with scarcely any contradiction at all, that appellee became the owner of the west one hundred feet of lot 11 in 1904; that an elevator has been on said lot since prior to the civil war and that it was continuously patronized by the public; that lot 12 lies immediately south of and adjoining said lot 11; that Murray street, in the city of Savanna, runs east and west along the south side of lot 12; that for more than fifty years there has been a traveled way across lot 12, extending from Murray street in an almost direct line north to the elevator on said lot 11, now owned and operated by appellee; that the general public have had the free and uninterrupted use of said roadway for hauling grain, hay and feed to and from said elevator on lot 11 for more than fifty years continuously, and have also used it in hauling stock to the stock yards north of the elevator on lot 10; that the roadway as traveled by the wagons has been on practically the same line for all that time and that said road is a well beaten track across lot 12; that the road was also used by pedestrians in going to and from the elevator on lot 11 and the stock yards on lot 10, and for driving stock to the stock yards. There is evidence in the record that pedestrians and the stock that was driven to the stock yards did not at all

times follow exactly the beaten track but would also travel outside of the track on lot 12 because it was an open lot. Nearly all of the witnesses said, when they testified on the point, that their right to travel on said road was never questioned by anyone, and some of them testified that there was no permission asked or given by anyone to travel on said road, and there is no evidence to the contrary. From the testimony of some of the witnesses it appears that the use of the road was not confined entirely to wagons and teams but was used as a means of travel in any way that they desired, whether on foot or otherwise, and that when they traveled on the road they would go anywhere north of the elevator they desired to go. There is ample evidence in the record to establish a public way by prescription, in the absence of a showing that the use by the public was permissive rather than adverse. There is no such showing. The use and enjoyment of the roadway by the public for such a length of time create a presumption of a grant or a way by prescription. Where the proof shows uninterrupted use by the public of an alleged highway or street for the period necessary to establish a highway by prescription, the burden is upon the one denying the existence of such highway or street to show that such use was under some license or indulgence inconsistent with the claim of right by the public. *Thorworth* v. *Scheets,* 269 Ill. 573; *Wiehe* v. *Pein,* (*ante,* p. 130.)

The evidence is in conflict as to whether or not the travel on a part of the south end of the roadway for the last fifteen or twenty years has been on the same line, some of the witnesses testifying for appellants that there has been a variation of from fifteen to nineteen feet to the eastward, while the testimony of appellee's witnesses is to the effect that the line of travel has been substantially on the same beaten way. The roadway is only from twelve to fifteen feet in width where the wagons travel, and we think the

court was clearly warranted in finding for appellee upon the issue of a deviation from the regular traveled way.

We do not think the evidence supports the contention of appellants that the use of the way was entirely confined to parties hauling grain to the elevator and taking stock to the stock yards, as we have already shown. The elevator has been used at times as a grain elevator, which shipped its grain on the railroad which crosses the lot just east of it and has an industry track just to the west of it. At other times it has been used as a general feed store and at one time as a junk shop. We cannot accede to the proposition, however, that a *cul-de-sac* or road that ends at a man's farm or place of business may not become a public highway simply because it is used by the public in their dealings with the party at the end of the road. The road is open to public use, and the word "public" means all those persons who may have occasion to use the road. (*Gillespie* v. *Duling,* (Ind.) 83 N. E. Rep. 728; *Sheaf* v. *People,* 87 Ill. 189.) The test of a public highway is not as to the limited use to which the road may be subjected nor as to the number of people that may use it, but rather as to the right of the public,—that is, all persons,—to use it as a road when they have occasion to do so.

It is finally argued by appellants that the evidence is not sufficient to sustain the finding of the court on the alleged agreement that appellee had agreed to forbear suit and to permit the Neola Elevator Company to extend a grain-bin for the distance of one and a half feet on the west side of the roadway on lot 12 in consideration that the company would at no time thereafter question or interfere with appellee's right to said roadway. We have examined the evidence with care on this point, and our conclusion is that the evidence clearly shows that such an agreement, in substance, was made. One of the witnesses for appellants, in a way, denies that such an agreement was made. He states, however, that he was not present all the

time when it is claimed by appellee that such an agreement was made, and admits that the Neola Elevator Company was about to build said grain-bin in a way that would encroach upon the road about four and a half feet, and that the appellee was objecting to it and threatening to institute suit to enjoin the construction of it on the roadway; that Miner, the general manager of the Neola Elevator Company, had been sent for by him to adjust the matter with appellee, and that appellee, with his lawyer, met Miner on the roadway, and that they adjusted the dispute, put down a stake as to the furthest point east the bin should extend, and that the matter in dispute was settled and the bin was afterwards constructed at the place agreed on. Miner makes it sufficiently clear that such an agreement was made, by his testimony, in which he uses this language: "Agreement was made with Law that if we were permitted to place our tanks [grain tanks] in the place they are now located that the Neola Elevator Company never would interfere with Law in the use of his driveway over lot 12." The testimony of appellee and his son, when considered with Miner's testimony, makes it sufficiently clear that such an agreement or understanding was entered into by the parties, as found by the court.

The evidence in the record clearly shows that the structures that appellants had partially constructed and were intending to erect will be an obstruction to the roadway in question, and will deprive appellee, as well as the public, of the use of said road unless the same are removed. The evidence further shows that appellee has no other roadway to his elevator, and that he will sustain irreparable damage by being deprived of the use thereof as a public elevator unless the construction of the concrete walls is enjoined.

We find no reversible error in the record, and the decree of the circuit court is affirmed.     *Decree affirmed.*