THE CITY OF GREENVILLE, Plaintiff-Appellee, v. WARREN FILE, Defendant-Appellant.

(No. 69-160;

Fifth District—December 15, 1970.

Lindaver, Nieman & Lindaver, of Belleville, for appellant.

James E. Buchmiller, of Greenville, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This appeal is from a decree of the Circuit Court of Bond County, which permanently enjoined the Defendant-Appellant, Warren File, from interfering with the flow of traffic and the peaceable public possession of the tract of land in question. Plaintiff-Appellee is the City of Greenville.

The strip of land in question (hereinafter referred to as "the Tract") is a portion of Asbury Street in the City of Greenville, and was on August 26, 1947, conveyed by Jesse and Jane White to Waldemar Doll (hereinafter referred to as "Doll") who, in turn conveyed the premises to defendant Warren File on March 30, 1965. The White deed contained the following reservations:

"(Grantors herein reserve the right to operate and maintain a water line under and along the west side of said above described fifty (50) feet. Said line in operation at present time. Also the above described fifty (50) feet is sold for road purposes only and therefore building on same is prohibited.)"

and the deed from Doll to defendant contained the same reservations.

On August 11, 1967, the defendant File, placed a fence upon the Tract, which extended the entire width of Asbury Street, so as to entirely block vehicular traffic on the street. The obstruction remained until August 14, 1967, at which time the defendant, under the threat of the issuance of a temporary injunction, removed the obstruction and agreed not to restore the same pending hearing on the City's request for permanent injunction.

The injunction was primarily bottomed upon two legal conclusions which the Court found to be established by the facts:

1) That the plaintiff, City of Greenville, had proved a common law dedication and acceptance of the Tract in question; and

2) That the public had acquired a prescriptive right to use the Tract as a street, pursuant to the provisions of ch. 121, par. 2—202, Illinois Revised Statutes, 1967.

The establishment of either proposition would, of course, support the decree.

It may be said, at the outset, that there is no substantial disagreement between the parties as to the facts. The trial court filed in this cause, prior to the entry of the decree, an excellent memorandum opinion containing findings of fact and incorporated the same into his decree. Neither party here questions the findings of fact; defendant disputes only the legal conclusions reached by the trial court.

The evidence surrounding the purchase and use of the Tract discloses: that at the time of the White deed the real estate adjoining the

Tract on the south was owned by Doll, his brother Vernon, and his parents, and was staked out into building lots, the middle two of which had no ingress or egress except over the Tract. That early in the 1950's, Vernon Doll became the sole owner of the twenty-five acres adjoining the Tract on the south and offered lots for sale to the public. In 1948 Doll filled in a part of the Tract with rock making it useable for vehicular traffic and from that time on, the public used it, and no one had interrupted the traffic in any way until the time that defendant barricaded the street in 1967.

One Paul Shea, beginning in September 1948, drove over the Tract and had done so about fifty times prior to 1954 and other vehicles were using the Tract. Shea purchased a lot from Vernon Doll in 1954, built a house thereon and moved into it that year, and testified that in 1954 the Tract appeared to be a street.

From 1954 to 1960 other lots were sold by Vernon Doll and residences built thereon; in 1962 two more residences were constructed on the north side of the Tract which has been used by these residents as well as other members of the public. Doll saw people driving over the Tract and testified that the public did use this street from 1948 up until the time of the hearing; that anyone who wanted to drive over it did so; that he never publicly objected to any of the people using it, and that he never specifically objected to the public driving through that area. He testified that he bought it as a "private street"; also that he did not want the public to use the Tract but expected them to.

In 1958 the City began using Motor Fuel Tax funds in the maintenance of Asbury Street, including the Tract. The City has oiled, sanded and maintained the Tract as part of Asbury Street since 1954. In 1955 the City built a sewer line through the Tract servicing the houses along and near the Tract; in 1956 the City built a sidewalk from east to west on the Tract which has been used by the public since that time. There are no other streets or alleys servicing the lots along the street; in 1956 the high school was opened east of the Tract and school buses, teachers and students have used the Tract ever since. At least since 1948 the Tract has not been assessed for tax purposes. Doll was aware of the activities of the City, and of the sales of lots and the construction of residences.

■■ This brings us to consideration of the trial court's holding that a common law dedication and acceptance is established by the evidence. We agree that it is.

■■ The requisites of a common law dedication are:

1) An intent on the part of the owner to donate the land to public use;

2) Acceptance by the public;

3) Clear, satisfactory and unequivocal proof of these facts. *McCue v. Berge,* 385 Ill. 292, 299.

One of the findings made by the trial judge was that the White deed was a dedication which only required acceptance to establish the public right.

It is true that the restriction contained in the White deed to Doll and which was also contained in the deed from Doll to defendant, did not contain the word "public", neither did it contain the word "private". In *Kemper v. Campbell,* 27 Ill.2d., 376, 379, the deed contained the reservation that a portion of the premises conveyed were to be "used as a street", without designating the use as public or private. There was then proof of public use and the Court held that the language of the deed, followed by such proof of public use, established that "the intention to dedicate was plainly expressed in the deed itself, where the words 'to be used for a street appear.'"

We agree with the reasoning of the trial judge that the restriction against building on the Tract, contained in the White deed, makes no sense if the Whites intended to convey to Doll a road to be privately used by him, since it would not concern the Whites if Doll obstructed his own private road. Further, there was no occasion for the Whites to designate, nor for Doll to request them to do so, what use was to be made of any portion of the premises if Doll in fact intended to devote the Tract to a particular use. The restriction against building, and the reservation of the Tract for road purposes is logical only if the Whites considered the Tract a public way and that it was to be so preserved.

■■ For these reasons we concur in the holding of the trial court that the White deed was a dedication to public use, requiring only acceptance.

It is equally clear that Doll dedicated the Tract for public use.

In *Phillips v. Leininger,* 280 Ill. 132, 138, the Court said, "Any acts on the part of the dedicator evincing intention to dedicate is sufficient." In *Moffett v. South Park Commissioners,* 138 Ill. 620, 623, the Court stated, "The owner of the land must do some act, *or suffer some act to be done,* from which it can be fairly inferred he intended a dedication to the public", and that "Intention here, as in other cases where it becomes material," may be proved by "* * * the act, by the conduct * * * of the party * * * and any acts of his showing an intention to dedicate are sufficient."

Doll testified that he did not want the people to use the strip in question, but never publicly (or even privately according to the record) objected and that he expected them to use it.

■■ While it is essential that there must be an intent on the part of the owner to dedicate his land to public use, "the intent which the law means however, is not a secret one, but is that which is expressed in the visible conduct and open acts of the owner. The public as well as individuals, have a right to rely on the conduct of the owner, as indicative of this intent." *Alden Coal Co. v. Challis*, 200 Ill. 222, 228.

In *Phillips v. Leininger, supra*, the Court said: "The law will imply an intention to dedicate land to a public use from any acts of the owner indicating an intention to so appropriate his property, and where his conduct has been such as to lead an ordinarily discreet and thoughtful person to infer an intention to make a dedication, accept the same for a public use and use it as a public highway, the dedication becomes complete.

The fact that a road *is recognized by the authorities* * * * as one of its public highways and work the same as other roads in the township and has been continually in use by the general public, strongly indicate that it is one of the public highways of such township."

■■ The general rules governing the creation of a common law dedication are well settled. No particular form is required. It may be evidenced by acts and declarations. Any act on the part of the dedicator evincing intention to dedicate is sufficient. *Alden Coal Co. v. Challis, supra; Hooper v. Haas* 332 Ill. 561.

Appellant cites *Palmer v. City of Chicago*, 248 Ill. 201, 210, for the proposition that a dedication results from an active and not a passive state of mind; from attention and not inattention. Palmer holds that the mere non-assertion of a right, *unaccompanied by other circumstances establishing the intention is not sufficient*, here the proof of "other circumstances" is abundant.

Clearer evidence of intention to donate the Tract in question to public use is difficult to imagine. Here, Doll acquiesced in the public use of the street commencing in 1948. Silently and without remonstrance, he observed the sale of lots and the construction of homes, fully realizing that there was no other means of ingress or egress except over the Tract. He observed the City improving, repairing and maintaining the street, constructing sidewalks and sewers. His conduct and acts have, since 1948, been such as would lead the public to believe that he intended a dedication.

The City authorities obviously, and with ample reason, so inferred. Doll's acquiescence in the public's use, the public's use, the repair, improvement and maintenance of the street, including the installation of public services conclusively establishes the dedication of the Tract.

■■ Additionally, both Doll and his defendant successor in title are estopped to deny the dedication. *Village of Benld v. Dorsey,* 311 Ill. 192; *Hooper v. Haas,* 332 Ill. 561.

The evidence of acceptance of the dedication is equally overwhelming.

"The general rules governing the creation of a common-law dedication are well settled. No particular form is required. It may be by grant or other written instrument, or it may be evidence by acts and declarations without writing. Any act on the part of the dedicator evincing intention to dedicate is sufficient." *McCue v. Berge, supra; Hooper v. Haas, supra.*

■■ "Acceptance by municipalities may be manifested by the affirmative act of taking possession, or by general use by the public for a considerable period of time." *McCue v. Berge, supra.*

"The fact that a road is recognized by the authorities * * * as one of its public highways and work the same as other roads in the township and has been continually in use by the general public, strongly indicate that it is one of the public highways of such township." *Phillips v. Leininger, supra.*

■■ The acceptance of a dedication by public authorities may be implied from their acts such as repairing, improving, lighting and other such evidence of assumption of control. *Alden Coal Co. v. Challis, supra.*

Acceptance by the City may be manifested by the taking of possession and where, as here, the dedication is very beneficial and convenient or necessary to the public, an acceptance may be implied from slight circumstance. *McCue v. Berge, supra; Alden Coal Co. v. Challis Co. supra.*

As stated above, beginning in 1958, Motor Fuel Tax funds were used in the process of repairing and maintaining the Tract. Such funds may only be used by a City for (among other permitted uses) construction and maintenance of municipal streets as may be designated by the corporate authorities and approved by the Department of Public Works and Buildings of the State of Illinois. Ill. Rev. Stat. 1969, ch. 121, pars. 7—202, 7—202.2.

Thus the facts which establish the dedication, also conclusively demonstrate acceptance.

The finding by the trial court that a prescriptive right has been proven pursuant to the provisions of (Ill. Rev. Stat. 1967, ch. 121, par. 2—202), is also supported by the evidence. In substance the statute provides that any public way which has been used by the public as a highway, for fifteen years is a public highway.

■■ The use must be adverse, under claim of right, continuous and uninterrupted, and with the knowledge but without the consent of the

owner. (*Swinford v. Roper,* 389 Ill. 340, 344; *Van Amburg v. Reynolds,* 372 Ill. 317, 322.) That the public use which commenced in 1948, was adverse, with his knowledge, without (according to his testimony at the time of trial) his consent is established by Doll, himself.

 Where a roadway is shown to have been used and enjoyed by the public for the time required by statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of the right by the public. (*Van Amburg v. Reynolds* 372 Ill. 317, 323; *Lee v. Dickman* 316 Ill. 529, 533.) The presumption is raised by the evidence here; defendant made no effort to meet or overcome the presumption; which thus forms an additional foundation upon which the trial court's finding securely rests.

Anyone who has had the persistence to peruse the saga of Asbury Street thus far, is entitled to know the circumstances surrounding the purchase of the Tract in question by defendant File. It is the only parcel of land which he owns on, near, or in the vicinity of Asbury Street.

The evidence was that Doll had owed defendant the sum of $300.00 for over twenty years, plus an additional $300.00 on a debt involving the sale of fertilizer and incurred some twelve years prior to the purchase of the premises. Neither debt was evidenced by any writing. These debts were cancelled as consideration for the deed. Since both debts were barred by the lapse of time, Mr. Doll received nothing in exchange for the conveyance, which seems appropriate in view of what Mr. File acquired under the deed. Mr. File testified that he just wanted to see if the "deed meant anything" and that he "hopes to get some money from the City." Mr. Doll testified that Mr. File told him that he bought the property to defend himself on parking tickets that he had received from the City of Greenville.

One has the feeling that were appellant to prevail, the shortest Toll Road in the State of Illinois would result.

One may view appellant's motives with mixed emotions, while wondering at his spirit and determination, and at the same time hold against him on the law, which we do.

The decree of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J., and EBERSPACHER, J., concur.