JOHN W. WALDEN *et al.*, Plaintiffs-Appellants, *v.* ROBERT BOURN, Defendant-Appellee.

ROBERT BOURN, Defendant and Counterplaintiff-Appellee, *v.* JOHN W. WALDEN *et al.*, Plaintiffs and Counterdefendants-Appellants—(EDWIN L. STEGMAIER, Defendant-Appellant.)

(No. 72-195;

Third District—March 6, 1973.

John F. Sloan, of Mathis, Sloan and Littler, of Peoria, for appellants.

Theodore Korb, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

John W. Walden and Bertie J. Walden, hereinafter referred to as the Waldens, as owners of Lot 39 in LaRue Heights, Tazewell County, brought action to enjoin Robert Bourn, hereinafter referred to as Bourn, from traveling across the back portion of their lot and to further recover damages from him for allegedly damaging their yard with his vehicles. Bourn filed a counterclaim against the Waldens and an Edwin L. Stegmaier, who sold them Lot 39. In his counterclaim it was the contention of Bourn that a public roadway existed across the lot in question for more than 15 years, that pursuant to Chapter 121, Section 2—2—2, Illinois Revised Statutes, a *de facto* dedication has occurred whereby the roadway had become a public highway and that the Waldens and Stegmaier should be enjoined from interfering with his use of the same. After hearing the trial court of Tazewell County denied the Waldens' prayer for an injunction but granted injunctive relief against them in that they were ordered perpetually enjoined from denying Bourn and the general public from the use of a strip of land fifteen (15) feet in width across the easterly end of lot 39.

A more detailed recital of the factual situation discloses that in 1937 Bourn acquired a tract of land lying east of a 40 acre tract belonging to the Stegmaier estate. Access to Bourn's land in 1937 was over a narrow

country lane, wide enough for just one automobile and known as Moushon Lane. Immediately north of the Stegmaier tract was the Moushon farm upon which was a farmhouse which had been in existence for approximately 100 years. The only ingress and egress to the Moushon farm was over the lane which crossed the Stegmaier tract in a northerly and southerly direction. Early in the 1940's two more homes were constructed along Moushon Lane, which were south of the farmhouse, but north of the Stegmaier land. The access to all of these homes by owners, suppliers and the general public was by using Moushon Lane. The lane was open and used by the public for more than 40 years until it was closed by the Waldens when they erected a barricade in 1969.

The title to the Stegmaier property ultimately vested in Edwin L. Stegmaier, who in 1961 platted LaRue Heights Subdivision No. 3. The subdivision plat made no provision for the road known as Moushon Lane but does provide for an eight (8) foot utility easement along the east side of the subdivision. Access to lots in LaRue Heights Subdivision No. 3 is by Willow Lane, which starts along the west border of the subdivision until it reaches lot 47 when it then turns east 140 feet to the center of the subdivision and then proceeds in a northerly direction to a *cul-de-sac,* the most northerly point of which is 15 feet south of the north line of the 40 acre tract. The plat further indicates a right of way or easement from the north end of the *cul-de-sac* in an easterly direction along the north line of the subdivision to its eastern boundary and thereby provides access to the remainder of Moushon Lane, which serves the old Moushon farmhouse and two other more recently erected buildings.

Testimony adduced during the course of the trial established that a portion of lot 38 had been dedicated as a right-of-way from Willow Court at the point it turns north, to the easterly edge of the subdivision, and has been called Munter Place. Bourn gives his address as 109 Munter Place. Both Munter Place and the right-of-way at the northerly end of the subdivision end at the westerly boundary line of the Bourn property. Further evidence disclosed that the improvements on the Bourn property are east of lot 40 of the subdivision, this lot being owned by a family who is not a party to this proceeding.

For purposes of clarity and understanding the trial court prepared a map setting forth the location of the properties, easements, right-of-way, court and gulleys as they were established by the recorded plat and evidence. The accuracy of this map as prepared was not questioned by any of the parties to this cause and we hereby incorporate it in this opinion as an aid to a better and more complete understanding as to the factual situation which gave rise to this appeal.

There is testimony in the record which supports a finding that until 1969, approximately eight years after the subdivision was platted and partially developed, the public gained access to the Bourn property and other properties north of the subdivision by traveling over Moushon Lane, which was a strip of land fifteen feet in width and which ran in a north and south direction over the easterly end of the lots on the east side of the subdivision. The route followed to reach the Bourn residence was to proceed east on Munster Place, then north on Moushon Lane across lot 39 and a part of lot 40 to a driveway which went through a line fence to the Bourn property.

Prior to the time the Waldens purchased lot 39 they lived in the Moushon farmhouse and used Moushon Lane a number of years for purpose of ingress and egress. Other pertinent testimony was adduced to the effect that road equipment and snow plows occasionally worked on Moushon Lane. The municipality of East Peoria provided garbage pick up service for a period of approximately eighteen months and its trucks used the lane. From 1953 to 1969 school buses picked up and discharged children at the Bourn residence and other residences and the school bus run terminated in the farmyard of the Moushon farm. From the testimony of Bourn and the counter-defendant Stegmaier it is apparent that Moushon Lane has been in existence and used by the public without the permission of the owner Stegmaier for a period of time in excess of fifteen years. It should also be noted that a number of photographs were admitted in evidence which tend to bear out the contention of Bourn that gullies and other topographical features present serious difficulties should he attempt to travel to and from his home by a route other than the one which he used up until 1969.

■■ We have entered into a lengthy and detailed recitation of the facts in this case since they to a great extent are determinative of the paramount issue presented for review. That issue is whether or not Moushon Lane is a highway as defined by statute. The applicable statute to which we refer is Chapter 121, Section 2.202, which provides as follows:

> "Highway—Any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for fifteen (15) years * * *."

The trial court by its decision found that Moushon Lane is a highway as defined by the statute which we have set forth and on review this court must determine if the findings of the trial court are palpably against the weight of the evidence. (*Van Amburg v. Reynolds*, 372 Ill. 317, 23 N.E.2d 694.) In *Van Amburg* our Supreme Court further stated:

"The test in determining whether a road has become a highway by user is whether or not the public, generally, had the free and unrestricted right in common, to use the road. Where a road has been shown to have been openly and notoriously used as an open public highway in common by all the people for the statutory period, it will be considered a public highway. *Phillips v. Leininger*, 280 Ill. 132, 117 N.E. 497; *Lee v. Dickman*, 316 Ill. 529, 147 N.E. 380. In determining whether a strip of ground has become a public highway by user the test is not the number of persons actually using it, but the character of the use,—that is, whether or not the public, generally, had the free and unrestricted right to use the road. *Mudge v. Wagoner, supra.* Where a roadway is shown to have been used and enjoyed by the public for the time required by statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of the right by the public. *Lee v. Dickman, supra; Thorworth v. Scheets*, 269 Ill. 573, 110 N.E. 42; *Law v. Neola Elevator Co.*, 281 Ill. 143, 117 N.E. 435."
From an examination of the testimony of the various witnesses it can only be concluded that Moushon Lane was used as a public road for a period of time in excess of fifteen (15) years. The defendant Bourn testified that he used the lane from 1938 to 1969. Witness Palmer who lived in the vicinity of the disputed lane for a period of 40 years testified that Bourn used Moushon Lane for purposes of ingress and egress for a period of 20 years prior to 1969. He also testified that the lane was serviced at various times by public authorities during this 20 year period of time. A witness, Lillian McCarrick, testified that she had no recollection that the lane was ever graded or snow removed from it by any road commissioner; however, her testimony was to the effect that she had lived on the lane from 1949 and used it as a way of ingress and egress as a matter of right and without seeking permission from anyone. She also testified that her daughter, a neighbor who resided on the lane, did likewise. It should be noted that the defendant Bourn and Stegmaier quarreled over Bourn's use of the lane to the extent that an arrest for trespassing was made, but no conviction ensued from this charge. Stegmaier in a deposition stated that he never granted Bourn permission to use the road but that he and other people used it anyway.

■■■ We make this further recital of the testimony to illustrate that there was evidence to support a finding that the use of the road by the public had been adverse, continuous and without the landowners permission for more than 15 years. (See *Taylor v. Wentz*, 15 Ill.2d 83, 153

N.E.2d 812.) The fact that the road was to some extent maintained by public authorities is a strong indication that it is a public highway. (*Taylor v. Wentz*, 15 Ill.2d 83, 153 N.E.2d 812; *City of Greenville, Bond County v. File*, 130 Ill.App.2d 878, 265 N.E.2d 518.) We do not deem the testimony regarding the maintenance of the road so vague as to fall within the category set forth in *People v. Waitkus*, 30 Ill.2d 335, 196 N.E.2d 668.

In applying these well settled principles of law to the evidence in the instant case we can only conclude that the trial court's findings were correct in that there was an open, notorious and uninterrupted use of the tract of land known as Moushon Lane by the public without permission or consent of the owner for more than 15 years. After such proof there is a presumption that the highway has been dedicated and the burden of proof is on the party denying existence of the public highway to show some grant of authority or permissive use of the same if such presumption is to be overcome. See *Stevenson v. Meyer*, 10 Ill.2d 335, 139 N.E.2d 740.

■■ An effort was made by the plaintiff to have introduced into evidence copies of pages from an abstract of title which purportedly would show an easement agreement between parties residing west of the defendant Bourn's property but the agreement did not include Bourn or other members of the public who were then using the road. The court rejected this evidence and we believe rightly so. Whether a proper foundation for its introduction was laid or whether it was the best evidence we deem immaterial since we fail to see how the agreement could be binding upon Bourn or the other members of the public who were using the roadway contrary to the wishes of Stegmaier, the one individual who could at one time have conceivably put a halt to such usage.

■■ Lastly the plaintiffs would urge that the trial court should be reversed since Bourn has available an alternate route to and from his premises. We do not so interpret the evidence but our interpretation is immaterial since the existence of an alternate route has no bearing on the question as to whether a public road exists. *Lee v. Dickman*, 316 Ill. 529, 147 N.E. 381.

For the reasons set forth the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STOUDER, P. J., and DIXON, J., concur.