THE VILLAGE OF JOPPA, Plaintiff-Appellee, *v.* THE CHICAGO AND EASTERN ILLINOIS RAILROAD COMPANY, Defendant-Appellant.—(THE MISSOURI PACIFIC RAILROAD COMPANY, Defendant.)

Fifth District   No. 76-337

Opinion filed July 15, 1977.

Ralph D. Walker, of Walker and Williams, of Belleville, Milton Helm, of Metropolis, and P. C. Mullen, of St. Louis, Missouri, for appellant.

Richard Kruger, of Metropolis, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, the Chicago and Eastern Illinois Railroad Company, brings this appeal from an order entered by the circuit court of Massac County. The judgment of the trial court declared the existence of certain easement rights of the plaintiff, the Village of Joppa, over land owned by the defendant railroad.

The plaintiff originally filed a complaint to quiet title against the defendant. The village asserted ownership in fee simple over certain property leading to or adjacent to the Ohio River, which property was in the possession of the defendant. The plaintiff based its claim on a purported dedication of the property for street purposes by one of the defendant's predecessors in title.

The plaintiff later amended its complaint to one seeking declaratory judgment, in order to establish what rights, if any, the village possessed in the disputed property. Those portions of the plaintiff's complaint which based its claim of right on a valid statutory dedication by the defendant's predecessor in title were stricken. The trial court ruled that the requirements for statutory dedication had not been met. The defendant filed a general denial to the remaining matter alleged in the village's complaint, and refrained from raising any affirmative matter on its own behalf.

At the close of all the evidence, the trial court entered declaratory

judgment, the relevant portions of which, for purposes of the appeal, follow:

> "I. The Village has an easement acquired by Common Law Dedication to use Front Street as a street from North Avenue at the Ohio River to the upper incline of the Railroad and extending from the Ohio River to the South Line of Tier I but compatible with physical structures of the Railroad in that area.
>
> * * *
>
> III. The Village has an easement by prescription to use North Avenue as a street from Main Street in the Village South to the Ohio River as used from 1901 to 1952."

It is from this judgment that the defendant railroad appeals. The issues presented are whether the trial court was correct in its assessment that the Village of Joppa has acquired a prescriptive easement over North Avenue, as well as an easement over Front Street by virtue of a common-law dedication.

North Avenue is a street running in a north-south direction through the Village of Joppa. A map of the original town of Joppa, filed along with a purported dedication of streets by one of the defendant's predecessors in title, indicates that the street runs south through Joppa to a point where it intersects with Front Street, at or near the northern bank of the Ohio River. The railroad acquired title to the land in question between 1900 and 1901. Railroad tracks cross North Avenue at a point north of the road's intersection with Front Street. The record discloses that after the railroad acquired ownership, the public's use of North Avenue as a means of access to the Ohio River was open, adverse, under claim of right, continuous and uninterrupted from at least the date of the railroad's acquisition until the years 1952 through 1958. It was within this period that the defendant constructed an incline and coal shaker across North Avenue, effectively blocking the public's passage to the river.

■■ The plaintiff alleged that a prescriptive easement had arisen in its favor over North Avenue, extending southward past the defendant's railroad tracks to the point of intersection with Front Street. The Supreme Court of Illinois stated in *Thorworth v. Scheets* (1915), 269 Ill. 573, 581, 110 N.E. 42, the requirements for a prescriptive easement:

> "* * * An easement by prescription can be created only by an adverse use of the privilege with the knowledge of the person against whom it is claimed, or by acts so open and exclusive that knowledge will be presumed, exercised under a claim of right, adverse to the owner and acquiesced in by him. Such adverse user must have existed for a period equal at least to the period prescribed by the statute,—now fifteen years."

The village based its claim of prescriptive easement in part on the continuous public use of North Avenue as a means of access to the river, in excess of the statutory period. It relied on section 2—202 of the Illinois Highway Code, which provides as follows:

"Highway—any public way for vehicular travel which has been laid out in pursuance of any law of this State, or of the Territory of Illinois, or which has been established by dedication, or used by the public as a highway for 15 years * * *." Ill. Rev. Stat. 1975, ch. 121, par. 2—202.

The defendant contended throughout that, while it did not deny the public's continuous use of North Avenue for a period far in excess of the statutory period, the public's use was permissive and not adverse to the interests of the railroad. The defendant maintained that such a permissive use could never ripen into a prescriptive easement.

Illinois courts have consistently followed the position taken by the Supreme Court of Illinois in *Torworth v. Scheets* (1915), 269 Ill. 573, 582, and *Van Amburg v. Reynolds* (1939), 372 Ill. 317, 23 N.E.2d 694. In *Van Amburg*, at page 322-23, the court stated:

"* * * Where a roadway is shown to have been used and enjoyed by the public for the time required by the statute, a presumption arises that such grant or use was prescriptive, and the burden is on one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of the right by the public."

For more recent restatements of this general proposition, see *Foster v. Wills* (1973), 13 Ill. App. 3d 127, 130, 299 N.E.2d 765; *Walden v. Bourn* (1973), 10 Ill. App. 3d 289, 294, 296 N.E.2d 92.

■■ While the defendant alleged the public's use was permissive, the record does not disclose any evidence supporting the position that the public's use was under the railroad's license or indulgence. Conversely, the record is replete with evidence supporting the village's claim that the public's use was open, adverse, under claim of right, and with the knowledge and acquiescence of the railroad for a period in excess of that prescribed by statute, including evidence that the village made improvements and repairs to North Avenue from time to time. The trial court found that the village had met the requirements for establishing a prescriptive easement, and that the railroad had failed to rebut the proof so presented. It ruled correctly, we believe, that an easement by prescription over North Avenue arose in favor of the Village of Joppa. The railroad failed to raise questions of whether the easement had been abandoned by the village, or whether the village should be estopped from asserting its rights, in view of the fact that North Avenue has been

obstructed since the 1950's. The railroad having failed to raise either of these issues in the trial court or before this court, we do not deign to address them on our own motion for the first time here.

The other point of dispute for purposes of this appeal is a strip of land running adjacent to the northern bank of the Ohio River, Termed Front Street in the record. Front Street is a street designated on the original map of the town of Joppa filed with the county clerk of Massac County in 1872. It was the subject of an attempted statutory dedication by one of the defendant's predecessors in title, which, as previously noted, was deemed unsuccessful. The street, as designated in the original map is located at the southern property line of 12 numbered lots situated in what is described in the map as Tier One. The street appears to provide a means of ingress and egress to the landowners in Tier One.

■■ The trial court ruled that the village had acquired an easement by common-law dedication over Front Street. This court stated in *City of Greenville v. File* (5th Dist. 1970), 130 Ill. App. 2d 878, 265 N.E.2d 518, the requisites of common-law dedication:

"(1) An intent on the part of the owner to donate the land to public use;

(2) Acceptance by the public;

(3) Clear, satisfactory and unequivocal proof of these facts. *McCue v. Berge*, 385 Ill. 292, 299."

The plaintiff based its claim for common-law dedication on numerous factors. The village maintained the intent to donate the land to the public use was manifested by the recordation of the conveyance and dedication by the defendant's predecessor in title. Acceptance of the dedication of Front Street, the village maintained, was based on the following:

1. Use of Front Street by the public;

2. Formal acceptance by the village in 1909 of the Plat or Map of Joppa;

3. The adoption of the Revised Ordinances of 1905 establishing the southern boundary of the village as the Ohio River, thereby encompassing Front Street;

4. The acceptance of the platting of the village by the railroad and the public as evidenced by numerous deeds, leases, tax returns, and oral testimony evinced at trial.

The defendant argued that the requirements of common-law dedication had not been met, based on three different grounds. First, the defendant claimed that there was not a sufficient showing of intent on the part of the owner to dedicate the land to public use. The railroad argued that its predecessor in title had not specifically marked the boundaries and dimensions of Front Street, as he had so marked other streets to be dedicated, and that by the language of the acknowledgment to the

dedication no intent to dedicate was evidenced. Second, the railroad denied there was any clear and convincing proof of an acceptance by the public. It cited the acceptance by the village of the map of the original town of Joppa in 1909 as the only instance wherein the village manifested a willingness to accept the dedicated area known as Front Street. The railroad further maintained there was a lack of clear proof that the public used Front Street to any great extent. Third, the railroad argued the village should be equitably estopped from asserting rights over Front Street. It based its claim for estoppel on the grounds that the village had suffered the construction of various improvements by the railroad without complaint, that the railroad had paid taxes on the land in question, and that the land not in use had been leased to third parties for a number of years by the railroad.

For the purposes of a common-law dedication, the intent of the owner to dedicate can be evinced from any acts on the part of the dedicator. (*Phillips v. Leininger* (1917), 280 Ill. 132, 138, 117 N.E. 497.) The fact that the dimensions for Front Street were not specified on the plat is not significant. In light of the fact that the dimensions would vary along with the height and flow of the Ohio River, and the fact that the southern boundary line of Front Street as indicated on the map, is to conform to the meandering line of the river, the absence of written dimensions would not indicate a lack of intention to dedicate. We think the intent of the railroad's predecessor in title was clear, and that it was his intention that Front Street be dedicated to the public use.

The question of whether the village accepted the dedication of Front Street is not as readily apparent. With regard to what constitutes acceptance by the public, the Supreme Court of Illinois has stated:

> "Acceptance by municipalities may be manifested by the affirmative act of taking possession, or by general use by the public for a considerable period of time. Where a dedication is very beneficial or greatly convenient or necessary to the public, an acceptance may be implied from slight circumstances. (*Trustees of Schools v. Dassow*, 321 Ill. 346; *Alden Coal Co. v. Challis*, 200 Ill. 222.)" *McCue v. Berge* (1944), 385 Ill. 292, 299-300.

In this case, the offer to dedicate was made on or about the year 1872. There was no testimony on the use made of Front Street prior to the railroad's acquisition of the property in question. It is logical to assume, however, that the public used Front Street as a means of access to the river as much, if not more so, than it did before the railroad acquired the property. The trial court held that, while the evidence as to the public's use of Front Street was by no means as strong as with reference to North Avenue, there was evidence of such use as to at least a portion of Front Street.

Acceptance of the dedication might be based on such a finding of public use for a considerable period of time by itself. (*McCue v. Berge* (1944), 385 Ill. 292, 299.) However, in this case, the Village of Joppa did make a formal acceptance of the dedication, albeit the said acceptance came over 30 years after the attempted statutory dedication. At the time the formal acceptance was made by the village, the offer to dedicate had never been withdrawn. It is doubtful whether a withdrawal of the offer to dedicate would have been effective even if the railroad had attempted to do so. In an early case, the Supreme Court of Illinois stated:

"* * * [T]he sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots and their grantees that the public street indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claiming under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street." *Russell v. City of Lincoln* (1903), 200 Ill. 511, 518.

See also *Owen v. Village of Brookport* (1904), 208 Ill. 35, 43, 69 N.E. 952, for the same holding based on similar facts as in the case before the bar. As the railroad's predecessor in title conveyed lots in Tier One to various grantees, based on the above-cited cases, the railroad would be barred from withdrawing the earlier offer to dedicate. In this instance, however, no affirmative action was ever taken by the railroad or any predecessors in title to withdraw the offer, and therefore the village's formal acceptance in 1909 was not untimely.

Further evidence supporting the contention that the village accepted the offer to dedicate can be found in the village's adoption of its Revised Ordinances of 1905. Those ordinances contained a reference to the boundary lines of the village as extending to the Ohio River, thereby encompassing Front Street. The adoption of the ordinances was another affirmative manifestation of the village's acceptance of the dedicated area.

■■ The village also cited the railroad's references to the original map of the town of Joppa in transactions with third parties, after the village had formally accepted the map. Those references tend to indicate the railroad's own tacit approval of the map previously accepted by the village. Based on all the evidence, we think it is clear that the village did indeed accept the offer of dedication made by the railroad's predecessor in title.

■■ The railroad's argument made before the trial court that the village should be equitably estopped from asserting rights over Front Street is not persuasive. The facts indicate that, while the railroad did

construct improvements over Front Street, they did not rely on any affirmative acts of the village in so doing. In the case of *Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 407-08, 178 N.E.2d 358, the Illinois Supreme Court stated the rule of equitable estoppel as it is applied to municipalities:

> " 'Where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied.' But before the doctrine can be invoked there must have been some positive acts by the municipal officers which may have induced the action of the adverse party. Mere nonaction is not enough. (*People ex rel. Petty v. Thomas*, 361 Ill. 448; *Melin v. Community Consolidated School Dist.*, 312 Ill. 376.)"

In this case, the Village of Joppa may have been guilty of inaction, but there was no evidence of affirmative steps taken by village officers on which the railroad relied to its detriment. The village is, therefore, not estopped from claiming its rights over Front Street. The trial court's ruling allowing the village an easement over Front Street, but compatible with the physical structures of the railroad in that area, affords the railroad sufficient protection against prejudicial effects due to the village's inaction.

We find that as to North Avenue, the Village of Joppa has proved the existence of a prescriptive easement. As to Front Street, we find the elements of common-law dedication have been satisfied, thereby resulting in an easement over the said street, in conformity with the trial court's ruling.

Affirmed.

G. MORAN and JONES, JJ., concur.